STATE of Maine

v.

Jeffrey SONDERGAARD.

Supreme Judicial Court of Maine.

March 5, 1974.

Alan C. Pease, Special Asst. Atty. Gen., Wiscasset, for plaintiff.

Fitzgerald, Donovan & Conley, P. A., by J. Michael Conley, III, Bath, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

WERNICK, Justice.

An indictment returned (November 1972) to the Superior Court by a Lincoln County Grand Jury accused defendant, Jeffrey Sondergaard, of conduct in violation of 17 M.R.S.A. § 3701.[1] Specifically, the charge was:

"On or about May 28, 1972 in the Town of Whitefield, Lincoln County, Maine, Jeffrey Sondergaard did make to another, to wit, Joanne Lavoie an oral threat to injure one Robert S. Barnes, to wit, by then and there stating that he, the said Jeffrey Sondergaard was going to shoot the said Robert S. Barnes."

Defendant was arraigned and pleaded not guilty. Subsequently, with the permission of the Court (Rule 12(b)(3) M.R. Crim.P.), defendant moved to dismiss the indictment on the ground that its factual allegations were insufficient to charge "an offense against the State of Maine." The presiding Justice granted defendant's motion.

With the written approval of the Attorney General, the State has taken a timely appeal from this ruling, as authorized by 15 M.R.S.A. § 2115–A(1).[2]

We deny the State's appeal.

The prior decisions of this Court concerning 17 M.R.S.A. § 3701 have involved a "communication, written or oral, containing a threat to injure . . . person or property . . ." "ma[de], publish[ed] or sen[t]" to *that* very person who, or whose property, is "threatened." In the case at bar, we confront for the first time an attempt by the State to have 17 M.R.S.A. § 3701 applicable in the outer limits of its textual language to outlaw the making to one person (Joanne Lavoie) of a "communication" containing an alleged ". . . threat to injure the person or property . . ." of a different person (Robert S. Barnes).

The approach of this Court to 17 M.R. S.A. § 3701 has abundantly reflected our recognition that insofar as that statute punishes "the fact of communication", it

---

1. In pertinent part 17 M.R.S.A. § 3701 provides:
"Whoever makes, publishes or sends *to another* any communication, written or oral, containing a threat to injure the person or property of *any* person shall be punished by a fine of not more than $500 or by imprisonment for not more than 5 years, or by both." (emphasis supplied)

2. 15 M.R.S.A. § 2115–A(1) reads:
"*1. Appeals prior to trial.* An appeal may be taken by the State in criminal cases on questions of law, with the written approval of the Attorney General, from the District Court and from the Superior Court to the law court from a decision, order or judgment of the court suppressing evidence prior to trial, allowing a motion to dismiss an indictment, complaint or information, quashing an arrest or search warrant or suppressing a confession or admission, or ruling against the State in any pretrial order. Such appeal shall be taken within 10 days after such order, decision or judgment has been entered, and in any case before the defendant has been placed in jeopardy under established rules of law. Any appeal which may be taken under this section shall be. diligently prosecuted."

projects immediate dangers of impairment of the freedom of speech guarantees of the First-Fourteenth Amendments to the Constitution of the United States. See: Cohen v. California, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971) (at p. 18). In our dealings with 17 M.R.S.A. § 3701 we have, therefore, been acutely sensitive to those factors by which the Supreme Court of the United States has differentiated "constitutionally protected speech" from "communication" which, although "speech", is without constitutional safeguard.

■ In State v. Hotham, Me., 307 A.2d 185 (1973), adverting to Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) we plainly stated that a statute which, like 17 M.R.S.A. § 3701, undertakes to criminalize "communication" will be ". . . struck down as unconstitutional on its face . . ." (307 A.2d p. 186) (on grounds of "vagueness" or "overbreadth") unless the statutory language, or a judicial construction of it afforded sufficiently in advance to provide a given defendant fair warning of prohibited conduct,[3] has ". . . adequately narrowed the reach of the statute to *unprotected speech*." (307 A.2d p. 187) (emphasis supplied) Also: Cason v. City of Columbus, 409 U.S. 1053, 93 S.Ct. 565, 34 L.Ed.2d 507 (December 11, 1972); Plummer v. City of Columbus, 414 U.S. 2, 94 S.Ct. 17, 38 L.Ed.2d 3 (October 15, 1973); Lewis v. City of New Orleans, — U.S. —, 94 S.Ct. 970, 39 L.Ed.2d 214, 14 CrL 3097 (February 20, 1974).

In this vein, State v. Hotham reviewed, and expressly reaffirmed specific criteria developed by this Court (in its undertaking to have 17 M.R.S.A. § 3701 consistent with the federal First-Fourteenth Amendments)

by which the concept of "threat" has been given substantive shape bringing it within a confined mold fashioned on the analogy of the doctrine of Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942), under which such "speech" as by its ". . . very utterance inflict[s] injury or tend[s] to incite an immediate breach of the peace" is held to lack constitutional protection. (307 A.2d p. 186 of State v. Hotham)

■ State v. Hotham stresses that, as thus substantively conceived, a "threat" must involve more than a message of "menace of destruction or of injury"; it is also an indispensable feature of a "threat" that its "promise of evil" must be in a context of circumstances by which it gives rise to reasonable likelihood that "alarm" or "fear . . . to his disquiet" will be induced in some person.[4]

This essential element of a true substantive "threat", as we have defined its meaning in 17 M.R.S.A. § 3701, poses no special problem and invites no extended consideration when, as in those situations previously addressed by this Court, a communication "pregnant with the promise of evil" is "made, published or sent" to the same person who, or whose property, is menaced. Inherent in such circumstances, ipso facto, is probability that alarm or anxiety will be induced in that person to whom the communication has been directed.

Significantly different, however, is the case at bar in which the "communication" has been "made" to a person other than the individual against whose person there is the imparting of a "menace of destruction." In such factual context the communicating of this "menace" cannot be fairly regarded as per se and automatically proj-

---

3. Such judicial construction must give adequate advance warning to avoid independent due process infirmities within the principles of Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964) and Douglas v. Buder, Judge, 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973).

4. State v. Hotham clarifies that, in this respect, the essential element is only the fact of a *reasonable likelihood* that some person *may*, and *not* that someone *actually does*, experience alarm or disquieting fear.

ecting reasonable likelihood that some person will be alarmed or subjected to anxiety.

■ Hence, insofar as the textual language of 17 M.R.S.A. § 3701 has literal breadth to encompass a communication "made, published or sent" to a person other than the individual against whose person, or property, a promise of evil is levelled by the communication, such communication legitimately contains a "threat"—as we have restricted the scope of that concept to avoid having 17 M.R.S.A. § 3701 struck down for "vagueness", or "overbreadth" encroachment upon constitutionally protected speech—only when further circumstances are adduced which indicate the existence of a reasonable likelihood that some person will be caused "alarm" or "fear . . . to his disquiet."

■ In the instant indictment no such additional circumstances have been alleged. Merely because the defendant stated to Joanne Lavoie that he "was going to shoot . . . Robert S. Barnes" (to whom, for all that appears in the indictment, Joanne Lavoie could well have been a total stranger separated from him by thousands of miles) fails to yield reasonable likelihood that Joanne Lavoie, as the recipient of the communication, would become alarmed or frightened. If, idealistically, each human being should strive to love every other as

himself, the realities of day-to-day living do not justify the imposition of criminal penalties on a basis which attributes a universal empathy of one human being for the potential plight of any or every other human being. In the present context, then, without (at minimum) additional allegations of the existence of a special relationship between Joanne Lavoie and Robert S. Barnes by virtue of which, in accordance with the ordinary course of human experience, it could justifiably be thought reasonably likely that Joanne Lavoie would be alarmed or caused anxiety by a "promise of evil" to Robert S. Barnes, or absent allegations of circumstances indicating probability that Robert S. Barnes would learn of the "menace" to his life thus to indicate a reasonable likelihood that alarm or fear would be induced in him, the instant indictment cannot, in any event, be adequate to charge a true substantive "threat" within the contemplation of 17 M.R.S.A. § 3701.[5]

The presiding Justice correctly granted defendant's motion to dismiss the indictment.

The entry is:

Appeal denied.

WEBBER, J., sat at argument but retired before the decision was rendered.

All Justices concurring.

5. The indictment derives no aid from its conclusory use of the word, "threat", since the underlying facts specified in the indictment to which is affixed the ultimate characteriza- tion, "threat", are insufficient to meet the criteria by which we have delineated the legal substance of a "threat."