STATE of Maine
v.
Martin J. DALEY.

Supreme Judicial Court of Maine.

Feb. 21, 1980.

Thomas E. Delahanty, II, Dist. Atty., Peter B. Dublin (orally), Asst. Dist. Atty., Auburn, for plaintiff.

Peter J. Becker (orally), Pickering & Becker, P. A., Bridgton, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY and GLASSMAN, JJ., and DUFRESNE, A. R. J.

McKUSICK, Chief Justice.

After trial *de novo* in the Superior Court (Oxford County) on appeal from District Court convictions, a jury found defendant guilty of escape from arrest, 17–A M.R.S.A. § 755, and two counts of terrorizing, *id.* § 210. On appeal to the Law Court he asserts error in the jury instructions as to what constitutes an arrest and challenges the sufficiency of the complaints charging him with terrorizing.[1] We sustain the appeal on the first claim of error but affirm the convictions for terrorizing.

On December 23, 1978, in the town of Fryeburg, there occurred a high-speed

---

1. Defendant also claims that by its plain words 15 M.R.S.A. § 1701 (Supp.1979) will deny him any credit against his sentence for the time he served after conviction and before being bailed pending appeal and that section 1701 as so construed is unconstitutional. *See North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In response, counsel for the State asserts that the Executive Branch does not so apply section 1701 and that defendant will get credit for the time served. In any event, since on this issue defendant attacks neither the validity of his conviction nor the legality of the sentencing proceedings, it cannot be raised on direct appeal.

chase over five miles of snow-covered highways and back roads. Defendant Martin J. Daley, whose vehicle was being pursued by a police cruiser driven by Officer Ralph Shevlin, finally went off the road and struck a tree. Officer Shevlin stopped his cruiser and approached defendant, who had alighted from his vehicle. Defendant then shouted obscenities at the officer, threatening to kill him.

Standing some six to twelve feet from defendant, Shevlin stated, "You are under arrest." When defendant asserted that Shevlin could not arrest him for motor vehicle violations, the officer ordered defendant to place his hands over his head. Defendant instead placed his hands in his pockets, and Shevlin drew his pistol and again ordered defendant to place his hands above his head. This time defendant stepped back, turned, and ran.

After a brief foot chase, Shevlin succeeded in subduing defendant and placed him in handcuffs. On the way to the police cruiser, defendant repeated his death threat to Shevlin and made similar threats to Deputy Sheriff Earl Hill, who had arrived on the scene.

## I.

Defendant was charged by complaint with violating 17–A M.R.S.A. § 755,[2] in that he left "the official custody of [Officer] Shevlin, after having been placed under arrest."[3] Defendant alleges error in the presiding justice's jury instructions as to what constitutes an arrest, a necessary element of the crime with which he was charged. He contends that where, as here, the officer had not gained physical control of the prospective arrestee, there must be evidence of the latter's *submission* to the officer's authority. The State responds that in the instant circumstances no showing of submission is necessary, it being sufficient that the officer had the *present power* to assert control over defendant.

In discussing the crime of "breaking arrest" under 17 M.R.S.A. § 1405 (1965),[4] the predecessor to section 755, the Law Court identified the four elements of an arrest to be: (1) an intention on the part of the arresting officer "then and there to make the arrest" "under a real or pretended authority"; (2) a communication of that intention by the arresting officer to the one whose arrest is sought; (3) an understanding of that intention by the person who is to be arrested; and (4) "the actual or constructive seizure or detention of the person to be arrested by the one having the present power to control him." *State v. Powers*, Me., 386 A.2d 721, 727 (1978). Specifically addressing the fourth element in order to elucidate the distinction between actual seizure and constructive seizure, the court in *Powers* quoted other recent Maine cases for the proposition that:

> To constitute an arrest there must be either a physical seizure of the person by the arresting officer, *or a submission to his authority and control.*

(Emphasis added)

**2.** 17–A M.R.S.A. § 755 (1979) provides in pertinent part:

**Escape**

**1.** *A person is guilty of escape if*, without official permission, *he intentionally leaves official custody* . . . . .

. . . . .

**3.** As used in this section, *"official custody" means arrest*, custody in, or on the way to or from a jail, police station, house of correction, or any institution or facility under the control of the Bureau of Corrections, or under contract with the bureau for the housing of persons sentenced to imprisonment, the custody of any official of the bureau, or any custody pursuant to court order. A person on a parole or probation status is not, for that reason alone, in "official custody" for purposes of this section.

**3.** The charge of escape relates solely to the confrontation between defendant and Shevlin immediately prior to the foot chase.

**4.** The last sentence of 17 M.R.S.A. § 1405 provided:

> Whoever resists apprehension or breaks arrest shall be punished by a fine of not more than $1,000 or by imprisonment for not more than 11 months.

Under this provision, resisting apprehension and breaking arrest were separate, distinct crimes. *See State v. Powers*, Me., 386 A.2d 721, 728 (1978). They were distinguished in any given case by whether or not an arrest had taken place. *Id.*

*Id.* (emphasis added). The court went on to explain:

It is true that merely saying to a person—you are under arrest—without an effective physical restraint of the person concomitant with the proclamation will not constitute an arrest of the person. On the other hand, these same words— you are under arrest—are sufficient to effect an arrest of the person, if the person to be arrested is in the presence and power of the officer and in consequence of the communication submits to the officer's restraint. In this latter instance, however, if, instead of submitting, the person flees from the officer, there would be no arrest until the officer had laid hold of the person.

*Id.* at 728.

██ In his charge to the jury the presiding justice correctly outlined the first three elements of arrest; and then as to the fourth element he told them:

There has to be an actual or constructive seizure or detention of one person by another officer [sic] having the present power to control the person arrested.

He then instructed as follows:

Now, in some states . . . there are cases that . . . say . . . that to place a person under arrest there ha[s] to be more than just telling him he [is] under arrest, there ha[s] to be some touching to signify he [is] under control, touching. That, I am telling you, is not a mandatory element in the State of Maine

. . . .

[I]f all of the other elements of an arrest are present *a constructive arrest is made*, even though an officer may not actually control the person sought to be arrested, *when the officer who has the present power to control the person confronts the person and tells him he is under arrest.*

(Emphasis added) That instruction was plainly inadequate, if not outright erroneous. In failing to inform the jurors of the requirement of a submission (however brief) to the officer's authority, the justice left them to speculate as to the meaning of the term "constructive seizure." They may even have understood that the fourth element could be satisfied merely by evidence of the officer's present power to control.

Since Shevlin had not physically seized defendant, the case for the jury came down to a very close factual question—whether defendant's conduct in response to Shevlin's statement, "You are under arrest," constituted a *submission* to the officer's authority. Without an adequate instruction requiring the jury to address that question of submission, it is distinctly possible that they convicted defendant without properly finding all the elements of an arrest. Therefore, the judgment of conviction for escape from arrest must be vacated. *See State v. Boisvert*, Me., 236 A.2d 419, 423 (1967); *State v. Greenlaw*, 159 Me. 141, 148–49, 189 A.2d 370, 374 (1963).

██ We reject the argument advanced by the State that the enactment of section 755 effected a redefinition of the term "arrest" such that the previously distinct crimes of "breaking arrest" (*i. e.*, escape from arrest) and "resisting apprehension" (*i. e.*, resisting arrest) under 17 M.R.S.A. § 1405—which were distinguished by *whether an arrest had or had not occurred*—are now merged into the crime of "escape" under section 755. The provisions of chapter 31 of the Code and the *official commentary thereon* evince an intention on the part of the legislature to *retain* that distinction as it existed under the prior law. Section 755 itself, which deals with escape from "official custody," gives no indication that it was intended to broaden the concept of "arrest" to encompass a situation where there is neither a physical seizure nor a submission to authority. On the other hand, section 751,[5] which defines and prohibits the crime of "obstructing government administration," strongly indicates the contrary. Subsection 2 specifically provides:

with the intent to interfere with a public servant performing or purporting to perform an official function.

---

5. 17–A M.R.S.A. § 751(1) provides:

A person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act

This section shall not apply to:

**A.** Refusal by a person to submit to an arrest;

**B.** Escape by a person from official custody, as defined in section 755.

Thus, escape from official custody, referred to in (B), is by the Code envisioned as a different crime from refusal to submit to arrest, referred to in (A). The Code drafters, in their 1975 Comment to section 751, stated:

> The limitations in subsection 2 are designed to insure that in the subjects mentioned, criminality is determined by the statutes specifically dealing with those particular issues.

Through an apparent oversight, however, the drafters failed to follow through; they nowhere put into the Code a specific section dealing with "[r]efusal by a person to submit to an arrest," to parallel section 755 dealing with "[e]scape . . . from official custody."[6] We decline to remedy now, by a strained judicial construction of section 755, a problem that is better cured by legislative action.

## II.

On the first count of terrorizing, 17–A M.R.S.A. § 210,[7] the District Court complaint charged:

> That, on or about the 23rd day of December, 1978, . . . MARTIN J. DA-

LEY did communicate to Ralph Shevlin a threat to commit or cause to be committed a crime of violence dangerous to human life, namely, murder, against the said Ralph Shevlin by stating to the said Ralph Shevlin, "I'm going to kill you", and the natural and probable consequence of said threat was to place the said Ralph Shevlin in reasonable fear that the crime would be committed.

The complaint in the second count was identical except that the name of Earl Hill was substituted for that of Ralph Shevlin. Defendant reasserts his contention, appropriately raised by a pretrial motion to dismiss, that the complaints are insufficient under the Law Court's decision in *State v. Sondergaard*, Me., 316 A.2d 367 (1974),[8] because they merely paraphrase the statute but do not allege additional circumstances indicating a "reasonable likelihood" that the threatening words would cause " 'alarm' or 'fear . . . to his disquiet' . . . in some person." *Id.* at 369.

As this court has made clear, however, *Sondergaard* addressed the narrow situation where a threatening communication is made "to a person *other than* the individual against who[m] . . . a promise of evil is levelled by the communication." *Id.* at 370 (emphasis added). *See id.* at 368, 369; *State v. Fischer*, Me., 398 A.2d 402, 405 (1979). The instant complaints—alleging that defendant (a) threatened to *murder* (b)

---

**6.** Section 751 is based on the New Hampshire criminal code, N.H.Rev.Stat.Ann. § 642:1 (1974). Although section 642:6 of the New Hampshire code deals with escape from official custody, the comparable provision in the Maine code, section 755, is adapted from the proposed criminal code of Massachusetts. The New Hampshire code, in section 642:2, also deals specifically with resisting arrest, but no comparable provision was drafted for the Maine code. *See* 1975 Comments to 17–A M.R.S.A. §§ 751, 755.

**7.** 17–A M.R.S.A. § 210 (1979) provides in part:
**Terrorizing**
   1. A person is guilty of terrorizing if he communicates to any person a threat to commit or to cause to be committed a crime of violence dangerous to human life, against the

person to whom the communication is made or another, and the natural and probable consequence of such a threat, whether or not such consequence in fact occurs, is:
   A. To place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed; or
   B. To cause evacuation of a building, place of assembly or facility of public transport.

**8.** *Sondergaard* dealt with the crime of "threatening communications" under the pre-Code statute, 17 M.R.S.A. § 3701 (1965), but its reasoning carries forward with equal force to the crime of "terrorizing" under the Code. *See State v. Porter*, Me., 384 A.2d 429, 433 (1978); 1975 Comment to 17–A M.R.S.A. § 210.

the *same person* to whom the threat was communicated—were plainly sufficient. *See State of Hotham*, Me., 307 A.2d 185 (1973).[9]

The entry will be:

*In CR–79–25:*

Appeal sustained.

Judgment vacated.

Remanded to the Superior Court for proceedings consistent with the opinion herein.

*In CR–79–21 and CR–79–23:*

Appeal denied.

Judgment affirmed.

NICHOLS, J., did not sit.

---

**9.** Summarizing the prior Maine cases, including especially *Hotham*, this court in *Sondergaard* stated:

> This essential element of a true substantive "threat" [*viz.*, the attendant circumstances that deprive the communication of first amendment protection] . . . poses no special problem and invites no extended consideration *when*, as in those situations previously addressed by this Court, *a communica-*

*tion "pregnant with the promise of evil"* [such as the death threat in *Hotham*] *is "made*, published or sent" *to the same person who . . . is menaced. Inherent in such circumstances, ipso facto, is probability that alarm or anxiety will be induced in that person to whom the communication has been directed.*

316 A.2d at 369. (Emphasis added)