STATE of Maine

v.

Charles D. CAREY.

Supreme Judicial Court of Maine.

April 2, 1980.

Henry N. Berry, III, Dist. Atty., Peter G. Ballou, Deputy Dist. Atty., John H. Montgomery, III, Asst. Dist. Atty., orally, Portland, for appellant.

Fitzgerald, Donovan, Conley & Day, J. Michael Conley, III, orally, Theodore K. Hoch, Bath, for defendant.

Before McKUSICK, C. J., and GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Defendant was charged by complaint in the District Court (Brunswick) with operating a motor vehicle while under the influence of intoxicating liquor, 29 M.R.S.A. § 1312 (1978), and leaving the scene of an accident resulting in personal injury, id § 893. In this direct interlocutory appeal from portions of a pretrial suppression order, 15 M.R.S.A. § 2115–A (1980), the State challenges the District Court's decision to exclude from defendant's trial certain evidence obtained as the "fruit" of his arrest by a Brunswick police officer who had pursued him into the contiguous town of Topsham. The District Court premised suppression of that evidence on its conclusion that the arrest violated the "fresh pursuit" statute, 30 M.R.S.A. § 2364 (1978). Because the District Court misconstrued the pertinent language of that statute, and because we

conclude that defendant's arrest was not unlawful, we sustain the State's appeal and remand to the District Court for entry of the appropriate order.

The charges stemmed from an accident, occurring in the early morning hours of August 5, 1979, in which a young bicyclist was struck by a car traveling south on Route 1 (Mill Street) in Brunswick. At about 1:50 a. m. Brunswick Police Officer Labbe was called to the scene, where he discovered the victim lying in the road attended by a civilian. From descriptions of a green automobile given by two witnesses present at the scene and from automobile parts lying in the roadway—including a broken headlamp and a metallic emblem bearing the word "Duster"—Labbe began to suspect that defendant, whom the officer knew to own a green Plymouth Duster and to live in that vicinity, was involved in the accident. Some five to seven minutes after Labbe had arrived on the scene, defendant appeared there on foot accompanied by one Edward Lord. Defendant seemed to be intoxicated and expressed an unusual amount of concern about the condition of the accident victim. Asking another officer present at the scene to keep an eye on defendant, Labbe radioed to have other officers locate defendant's car and determine whether it showed damage corresponding to the evidence found at the scene.

While Labbe was waiting for a response to his radio request, defendant and his companion left on foot and crossed the nearby "railroad bridge" into Topsham, which lies across the Androscoggin River from Brunswick. A few minutes later[1] Labbe learned by radio that defendant's car showed signs of having been involved in an accident and was lacking its "Duster" emblem and one of its headlamps. Labbe immediately got into his cruiser and drove across the same bridge into Topsham, where he soon arrested defendant not far from the Topsham end of the bridge. Defendant was promptly transported to the police station in Brunswick where a sample of his breath was taken for chemical analysis, in full compliance with the procedure prescribed by Maine's "implied consent law," 29 M.R.S.A. § 1312. After a hearing on defendant's motion to suppress, the District Court ordered excluded from evidence, inter alia, the results of the chemical sobriety test and the observations made of defendant "by any and all law enforcement officers after the defendant was arrested in the town of Topsham."

The District Court premised its conclusion that the out-of-town arrest was unlawful on its finding that the Brunswick officer failed to comply with the fresh pursuit statute, 30 M.R.S.A. § 2364 (1978), which provides:

Arrest in other municipalities

Every municipal law enforcement officer in fresh pursuit of a person who travels beyond the limits of the municipality in which the officer is appointed shall have the same power to arrest such person as the officer has within the said municipality. This section shall apply to felonies, misdemeanors and traffic infractions.

With respect to felonies, the term "fresh pursuit" as used in this section shall be as defined in Title 15, section 152;[2] with respect to misdemeanors and traffic infractions, "fresh pursuit" shall mean instant pursuit of a person with intent to apprehend.

1. Officer Labbe testified that a minute or a minute and a half elapsed between the time defendant left the scene and the time he got into his cruiser. Defendant's companion, Edward Lord, the only other witness at the hearing, testified that Labbe's cruiser arrived in Topsham only four or five minutes after he and defendant had left the accident scene.

2. 15 M.R.S.A. § 152 (1980) provides:
 Fresh pursuit defined
 The term "fresh pursuit" as used in this chapter shall include fresh pursuit as defined

by the common law, and the pursuit of a person who has committed a felony or who is reasonably suspected of having committed a felony. It shall include the pursuit of a person suspected of having committed a supposed felony, though no felony has actually been committed, if there is reasonable ground for believing that a felony has been committed. *Fresh pursuit as used herein shall not necessarily imply instant pursuit, but pursuit without unreasonable delay.*
(Emphasis added)

(Emphasis added) The court ruled that the two offenses that occasioned defendant's arrest were "misdemeanors" within the meaning of the statute and that, because the court found Officer Labbe's pursuit of defendant was not "instant pursuit," Labbe lacked authority to arrest defendant outside the town limits of Brunswick.

■■■ Since, as the District Court found and we agree, Officer Labbe had probable cause to arrest defendant for operating under the influence *and* for leaving the scene of an accident,[3] that arrest fell within the special provisions of 29 M.R.S.A. § 1312(11)(B), which declares:

> Any officer authorized to arrest for violations of this section may arrest, without a warrant, any person involved in a motor vehicle accident, if the officer has probable cause to believe that that person has violated this section.

In light of the interpretation we give to the whole body of present statutes bearing upon the arrest powers of municipal law enforcement officers, we conclude that the quoted provision brings the arrest in the case at bar within the meaning of a "felony" arrest under the fresh pursuit statute.

When 30 M.R.S.A. § 2364 was enacted in 1971,[4] the terms "felony" and "misdemeanor" used therein had the specific meanings attached to them by statute, being general-ly those prevailing at common law. *See* 15 M.R.S.A. §§ 451, 1703 (1964) ("felony" is an offense punishable by imprisonment for one year or more at the state prison), repealed by P.L.1975, ch. 499, § 2. The felony-misdemeanor categories were, however, abolished by the enactment of the Maine Criminal Code, which went into effect on May 1, 1976. We therefore must now give meaning to terms that are no longer statutorily defined and that are no longer of any significance other than to delineate the arrest powers of municipal police officers.

Under the common law the power of a police officer to make a warrantless arrest depended upon the seriousness of the crime.[5] In order to arrest for a felony, only the constitutional requirement of probable cause had to be met, but "a warrantless arrest for a misdemeanor [was] improper, in the absence of broader statutory authorization, unless the offense [was] committed in the arresting officer's presence." *State v. Clark,* Me., 365 A.2d 1031, 1034 (1976); *State v. Stone,* Me., 294 A.2d 683 (1972); *Palmer v. Maine Central R.R. Co.,* 92 Me. 399, 42 A. 800 (1899). Since May 1, 1976, the effective date of the Criminal Code, the power to make warrantless arrests has been governed by that code, rather than by the common law. *See* 17–A M.R.S.A. § 15 (Supp.1979).[6] We must read the "fresh pur-

---

3. We reject out of hand defendant's argument that Officer Labbe had no basis for suspecting that it was defendant who had been operating the automobile at the time of the accident. The facts and circumstances known or believed to exist by the arresting officer need not rise to the level adequate to establish guilt beyond a reasonable doubt. *State v. LeBlanc,* Me., 347 A.2d 590 (1975).

4. P.L. 1971, ch. 243, enacting 30 M.R.S.A. § 2402–A, which became section 2364 by P.L. 1973, ch. 135.

5. Although the authority to effect a warrantless arrest had, since 1848, been granted by statute, 15 M.R.S.A. § 704 (1980), deriving from P.L. 1848, ch. 71, §§ 1 & 2, the common law as enunciated by this court denied the scope of that authority.

6. 17–A M.R.S.A. § 15(1) (Supp.1979), as amended by P.L. 1977, ch. 326, ch. 510, ch. 671, ch. 696, reads:

> Except as otherwise specifically provided, a law enforcement officer may arrest without a warrant:
> A. Any person who he has probable cause to believe has committed or is committing:
> (1) Murder;
> (2) Any Class A, Class B or Class C crime;
> (3) Assault while hunting;
> (4) Any offense defined in chapter 45;
> (5) Assault, if the officer reasonably believes that the person may cause injury to others unless immediately arrested;
> (6) Theft as defined in section 357, when the value of the services is $1,000 or less, if the officer reasonably believes that the person will not be apprehended unless immediately arrested;
> (7) Forgery, if the officer believes that the person will not be apprehended unless immediately arrested; or

suit" statute, 30 M.R.S.A. § 2364, in a way that will make it harmonize with and fit into the new statutory pattern laid down by the Criminal Code. It must be construed as part of a new set of statutes that has eliminated the common law categories of felonies and misdemeanors and has substituted for the common law a statutory enumeration of the occasions when a warrantless arrest is authorized.

Section 15(1)(A) of the Criminal Code permits, as did the common law, warrantless arrest on probable cause alone—the former test for felony arrest powers—for the most serious crimes, namely, murder and Class A, B, and C offenses. However, the Criminal Code goes further. It extends the "probable cause" or "felony" arrest power to situations where the offenses, though placed in a lower sentencing classification, are not normally committed in the officer's presence but where the legislature for practical or policy reasons has authorized an immediate arrest without waiting to obtain a warrant. Those practical or policy reasons are easily divined by examining the nature of the lesser offenses that the legislature has concluded justify giving police officers the felony-type arrest powers. In the case of most Class D or E drug offenses, see, e. g., 17–A M.R.S.A. §§ 1103, 1106, evidence may be destroyed or otherwise lost if an immediate "probable cause" arrest is not effected. The potential arrestee for the offense of assault while hunting, id. § 208–A, would likely be long gone from the area of the offense if the officer had first to get a warrant. A warrantless arrest on probable cause for assault, id. § 207, is permitted by section 15 of the Code only where the officer reasonably believes the suspect will otherwise cause further injury to others, and for theft of services, forgery, or negotiating a worthless instrument, id. §§ 357, 703, 708, only where he reasonably believes the suspect will otherwise not be apprehended. The legislature's reasons for treating those Class D and Class E offenses like common law felonies for arrest purposes are patent on the face of the statute. See 1977 Leg.Rec. 1368–69 (remarks of Sen. Collins).

The special arrest provision of the O.U.I. statute, 29 M.R.S.A. § 1312(11)(B), implicated in the case at bar, is still another example of the legislature's designation of a particular crime for which a "probable cause" or felony-type arrest may be made, provided a motor vehicle accident is involved. The legislature recognized that in those circumstances the O.U.I. offense itself will rarely occur in the presence of the officer who arrives upon or is called to the accident scene. As this court stated in *State v. Ayotte*, Me., 333 A.2d 436, 439 (1975):

> The overall purpose of the implied consent law was to increase the availability of reliable evidence as to the true state of a driver's sobriety.

By 29 M.R.S.A. § 1312(2) a lawful arrest is a condition precedent to the availability of license suspension, the statutory inducement for the arrestee's submitting to a sobriety test. See *Opinion of the Justices*, Me., 255 A.2d 643, 649 (1969). It is understandable that the legislature concluded that the only way "implied consent" evidence would as a practical matter be obtainable by an officer coming upon an accident scene was to give that officer the felony-type powers to make a prompt arrest on probable cause alone. See 1971 Leg.Rec. 4376 (remarks of Mr. Lund).

■ All of the statutes relating to a law enforcement officer's arrest powers must be read *in pari materia*. In the statutory framework that has prevailed since May 1, 1976, the terms "felony" and "misdemeanor" in 30 M.R.S.A. § 2364 defining the warrantless arrest powers of municipal police officers must be taken to make a shorthand distinction of those situations that permit an arrest on probable cause alone, from those other situations where presence of the arresting officer is additionally required. In situations where an officer has

---

(8) Negotiating a worthless instrument, if the officer reasonably believes that the person will not be apprehended unless immediately arrested; and

B. Any person who has committed in his presence or is committing in his presence any Class D or Class E crime.

the authority to make a "probable cause" arrest without a warrant, as for example for a drug offense or for O.U.I. involving a motor vehicle accident—exactly the same power as he has to arrest for murder or any other crime that was labeled a felony prior to the Criminal Code—it would be anomalous to deny him the same "felony" right of fresh pursuit; it would be anomalous to require him to undertake an instant pursuit of the suspect, rather than merely a "pursuit without unreasonable delay." *See* 15 M.R.S.A. § 152 (1980), n. 2 above.

 The legislative intendment is, we believe, clear. In the context of all the arrest statutes the now outmoded terms "felonies" and "misdemeanors" in 30 M.R.S.A. § 2364 have the meanings indicated by the bracketed matter in the following quotation:

> With respect to felonies [offenses for which a warrantless arrest may be made on probable cause only], the term "fresh pursuit" as used in this section shall be as defined in Title 15, section 152 ["pursuit without unreasonable delay"]; with respect to misdemeanors [any other offenses] . . . "fresh pursuit" shall mean instant pursuit of a person with intent to apprehend.

 The legality of defendant's arrest is determined by whether *Officer Labbe* departed to apprehend defendant "without unreasonable delay" and not, as the District Court erroneously ruled, by whether he acted "instantly." Although in the view of the court below the delay of, at most, five minutes precluded a finding that the "instant pursuit" standard had been met, it is beyond argument that Officer Labbe's pursuit of defendant was begun "without unreasonable delay." Therefore, the arrest of defendant in Topsham, where he had been followed in fresh pursuit by Officer Labbe, was lawful and the challenged evidence should not have been suppressed.[7] Accordingly, we remand for the District Court to

modify its order by denying defendant's motion to suppress the results of the chemical breath test and the observations by police officers subsequent to defendant's arrest.

The entry will be:

Appeal sustained.

Remanded to the District Court for modification of its order dated August 30, 1979, by striking items 1 and 2 from the list of suppressed evidence, and for further proceedings in accordance with the opinion herein.

WERNICK, J., did not sit.

---

7. We thus sustain the State's appeal without reaching the State's alternative point on appeal, namely, that even if the arrest had violated the fresh pursuit statute limiting the arrest powers of municipal police officers, that defect—since it would not rise to the level of a

constitutional violation—would in itself provide no occasion for application of an evidentiary exclusionary rule. *Cf. State v. Fredette*, Me., 411 A.2d 65 (1979). *See also State v. Carter*, Me., 412 A.2d 56, 61 (1980).