**STATE of Maine**

v.

**Frank A. DONAHUE, Jr.**

Supreme Judicial Court of Maine.

Oct. 9, 1980.

David W. Crook, Dist.Atty., J. Michael Talbot, (orally), Asst.Dist.Atty., Skowhegan, for plaintiff.

Paul K. Marshall, Kingfield, (orally), for defendant.

Before McKUSICK, C. J., and WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

McKUSICK, Chief Justice.

Defendant, Frank A. Donahue, Jr., appeals from his conviction in Superior Court (Somerset County), following a jury trial, for operating a motor vehicle under the influence of intoxicating liquor. 29 M.R.S.A. § 1312 (Supp.1980). The only issue we need to decide on this appeal is whether defendant's consent to a blood test provided for by section 1312 was obtained after a valid arrest. We deny the appeal.

While driving along State Route 146 in West New Portland at about 5:30 p.m. on September 25, 1979, defendant ran his pick-up truck into a bridge abutment. State Trooper Roy Gallant, responding to a call notifying him of the accident, arrived on the scene about a half hour later. Shortly after Trooper Gallant's arrival, defendant

was taken to the Franklin County Hospital in Farmington. Trooper Gallant remained at the accident scene for some time, then went to the hospital emergency room, where he advised defendant of his *Miranda* rights and informed him of the implied consent provisions of section 1312.[1] Defendant agreed to permit the taking of a blood sample; hospital personnel, acting at Trooper Gallant's request, then withdrew blood from defendant. At the end of the emergency room encounter, Trooper Gallant issued defendant a Uniform Traffic Ticket and Complaint, 29 M.R.S.A. § 2300 (1978), and left the hospital, where defendant remained as a patient. The laboratory test of the blood taken from defendant revealed a blood–alcohol content of .21%. At trial, defendant sought to exclude the results of that test, arguing that a valid arrest is a condition precedent to the application of section 1312[2] and that he was in fact never arrested. The presiding justice refused to suppress the blood test evidence. He did not err in so ruling.

On the evidence before him, the presiding justice was well justified in finding that defendant had been arrested by Trooper Gallant. This court has recently identified the four necessary elements of a valid arrest to be:

(1) an intention on the part of the arresting officer "then and there to make the arrest" "under a real or pretended authority"; (2) a communication of that intention by the arresting officer to the one whose arrest is sought; (3) an understanding of that intention by the person who is to be arrested; and (4) "the actual or constructive seizure or detention of the person to be arrested by the one having the present power to control him."

*State v. Daley*, Me., 411 A.2d 410, 411 (1980), *citing and quoting State v. Powers*, Me., 386 A.2d 721, 727 (1978). The first three elements of the *Daley* test are clearly met in the instant case. Trooper Gallant testified that he intended to put defendant under arrest; he communicated his intention to defendant by reading to him verbatim from a form prepared by the Motor Vehicle Division of the Secretary of State's office which contains the words "you are under arrest"; and defendant must be presumed to have understood the plain meaning of the officer's words, since there was testimony that he was mentally alert and coherent at the time they were spoken.

The fourth element of the *Daley* test is the focus of the present controversy. Defendant asserts that he was never physically seized by the trooper. Our cases clearly reveal, however, that a physical touching is not an essential ingredient of an arrest, at least where the words of arrest are spoken and the arrestee is "in the presence and power of the officer and in consequence of the communication submits to the officer's restraint." *State v. Daley, supra* at 411–12, *citing State v. Powers, supra* at 728. Trooper Gallant was in complete charge of the situation in the emergency room. He asserted as much control over defendant as the situation reasonably permitted or necessitated. *See State v. Rocheleau*, 117 N.H. 792, 794, 378 A.2d 1381, 1383 (1977) (arrest found to have occurred on substantially identical facts) (Kenison, C. J.). Trooper Gallant told defendant he was under arrest. He read defendant the *Miranda* warnings and informed him of the implied consent provisions of 29 M.R.S.A. § 1312. Defendant had just been injured severely enough to require eventual surgery; and he and

1. 29 M.R.S.A. § 1312 provides in pertinent part:

Any person who operates or attempts to operate a motor vehicle within this State shall be deemed to have given consent to a chemical test to determine his blood–alcohol level by analysis of his blood or breath, if arrested for operating or attempting to operate a motor vehicle while under the influence of intoxicating liquor.

He shall be informed by a law enforcement officer of the tests available to him, and said

accused shall select and designate one of the tests. At his request he may have a test of his blood administered by a physician of his choice, if reasonably available.

. . . . .

2. Since we determine that defendant was in fact put under arrest, we express no opinion on the validity of defendant's underlying contention that arrest is a prerequisite to the obtaining of consent under section 1312.

Trooper Gallant were within the confines of a hospital emergency room. Not only was defendant physically unable to leave the officer's presence, but he also was never free to do so: as Trooper Gallant testified, if defendant had not been confined to the hospital, he would have gone to jail.

Like the defendant in *State v. Babcock*, Me., 361 A.2d 911 (1976), defendant here yielded to the arresting officer's authority and control. Defendant submitted himself to the officer's routine "processing" of the case, by listening to the officer and indicating awareness of his *Miranda* and implied consent rights. Defendant's counsel concedes that defendant would have been validly arrested if Trooper Gallant had also merely placed his hand on defendant's arm or shoulder. There is no reason for making the validity of an arrest in the present circumstances turn on such an insignificant formality, reminiscent of the medieval livery of seisin. Trooper Gallant had in fact taken control of defendant in the emergency room, and defendant in turn had submitted to that control.

We also find no merit in defendant's contention that the fact that the Uniform Traffic Ticket issued to him stated that he was "summonsed" means that he was never arrested or negates any arrest that was made. The arrest that did take place and the issuance of the ticket were not contemporaneous. It is not disputed that defendant was released from custody at the moment he received the ticket. Until that moment, however, he remained under arrest.

The entry must be:

Appeal denied.

Judgment of conviction affirmed.

WERNICK, GODFREY and NICHOLS, JJ., concurring.

ROBERTS, J., with whom GLASSMAN, J., joins, concurring in separate opinion.

ROBERTS, Justice with whom GLASSMAN, J., joins, concurring.

I concur in the result reached by the majority. I would base that decision, however, upon an issue implicitly reserved in the opinion of the court. Footnote 2 at 937. Defendant Donahue makes no suggestion that Trooper Gallant acted without probable cause or violated any of Donahue's constitutional rights. Donahue raises the question of whether a technical arrest is a prerequisite to the admissibility of the result of a blood–alcohol test obtained under the implied consent provision of 29 M.R.S.A. § 1312. Because I would answer in the negative, I would not import into section 1312 the technical elements necessary to establish the validity of an arrest for the purpose of prosecuting an escape.

The obvious purpose for including an arrest requirement in section 1312 was to protect drivers from unwarranted demands for blood-alcohol analysis. As we pointed out in *State v. Carey*, Me., 412 A.2d 1218, 1221 (1980), the legislature's purpose of obtaining reliable evidence concerning sobriety of drivers was enhanced by extending to police officers the power to arrest on probable cause. I would find these legislative purposes accomplished when an officer has probable cause even though he may not have taken all of the steps necessary to accomplish a technical arrest prior to invoking the implied consent provisions of section 1312. I would not consider an "actual or constructive seizure or detention of the person" to be a prerequisite to the obtaining of consent under that section.