**STATE of Maine**

v.

**Daniel A. HOTHAM.**

Supreme Judicial Court of Maine.

July 9, 1973.

Donald H. Marden, Kennebec County Atty., Augusta, for plaintiff.

Berman, Berman & Simmons, P. A. by Jack H. Simmons, Lewiston, for defendant.

Before DuFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

WEBBER, Justice.

The appellant was convicted of a violation of 17 M.R.S.A., Sec. 3701 which in pertinent part provides:

"Whoever makes, publishes or sends to another any communication, written or oral, containing a threat to injure the person or property of any person shall be punished * * *."

It is suggested that the statute may suffer from unconstitutional vagueness and overbreadth. The answer to this contention lies in the construction we have placed upon the statute and particularly in the meaning we have assigned to the key word "threat" as used therein. In Haynes, Petitioner v. Robbins (1962) 158 Me. 17, 21, 177 A.2d 352, 354 we said, "The language is plain and understandable. The intent of the Legislature is equally clear that it intended to make it a crime for one to make, publish or send to another any communication, written or oral, containing a threat to injure the person or property of that person." In State v. Cashman (1966–Me.) 217 A.2d 28, 29 we provided a detailed definition of "threat" as here used and emphasized the criteria that (a) the words

used must impart "menace of destruction or of injury," (b) that the threat may be by innuendo or suggestion; (c) that in determining whether the words used constitute a true "threat," the circumstances under which the threat is uttered and the relations between the parties may be taken into consideration; and (d) that the threat must be such as would ordinarily create alarm. We drew upon State v. Boyer (1963) 2 Conn.Cir. 288, 198 A.2d 222, 225 for the phrase, "A threat is always an indication of probable evil to come, whether at once or at some certain or uncertain time in the future; * * *," and added thereto our own phrase that a statement which constitutes a threat is "pregnant with the promise of evil." Finally in State v. Lizotte (1969–Me.) 256 A.2d 439 we approved instructions to a jury which contained, in addition to an accurate paraphrasing of the criteria discussed above in this opinion, certain additional refinements. In effect the jury was told that the words used should constitute "the declaration of an apparent determination to carry them into execution;" that it is the reasonable and natural effect upon and understanding of the ordinary hearer which is controlling rather than the specific intent and motive of the one making the threat; that words which should properly be understood as idle talk or jesting do not constitute the crime, and that "the gist of this whole offense is the possibility of inducing fear in the mind of another person to his disquiet." To these elements of definition, we added these sentences:

"The essence of an oral threat is that it is a verbal act and if that act is of such a nature as to convey the menace to an ordinary hearer, the statute is violated. No more does it matter whether or to what degree the threat engenders fear or intimidation in the intended victim. Some men are braver than others and less easily intimidated. We do not ask whether or not this defendant succeeded in frightening a police officer. We ask only whether or not he used words

which would under the circumstances then existing be heard by an ordinary person as being spoken not in jest but as carrying the serious promise of death."

Although these words obviously had particular application to the Lizotte facts, facts which as will be seen closely resemble those in the instant case, the principles of law implicitly stated apply generally to threats. In the light of the meaning of the word "threat" as thus defined and the construction we have thus given to Sec. 3701, the argument that the statute is vague or overbroad must fail.

It is further suggested that a "threat" within the meaning of the statute may encompass pure speech protected by the First Amendment to the United States Constitution. The Supreme Court has repeatedly held that not all speech enjoys constitutional protection. Beauharnais v. People (1951) 343 U.S. 250, 72 S.Ct. 725, 96 L.Ed. 919 (libelous utterances); Roth v. United States (1957) 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (obscenity as limited and defined); Chaplinsky v. New Hampshire (1942) 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (fighting words). The Chaplinsky Court noted that unprotected speech includes "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." Such expressions do not "in any proper sense" communicate "information or opinion safeguarded by the Constitution." A state statute which contains language broad enough to reach protected speech will be struck down as unconstitutional on its face unless the state court has by construction limited the reach of the statute to unprotected speech. Gooding v. Wilson (1972) 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408. In Gooding the defendant was prosecuted for making a threat to kill another, not under a statute prohibiting the making of threats, but rather under a statute making it unlawful to use "opprobrious words

or abusive language, tending to cause a breach of the peace." A divided Court held that neither the language of the statute nor any construction placed thereon by the Georgia Court had adequately narrowed the reach of the statute to unprotected speech. It seems clear, however, that prosecution for the actual words spoken under a statute narrowly directed at the making of threats or the use of fighting words would have been constitutionally permissible.

In Watts v. United States (1969) 394 U. S. 705, 89 S.Ct. 1399, 22 L.Ed.2d 664, the court summarized a Federal statute as prohibiting "knowingly and willfully * * * [making] any threat to take the life of or to inflict bodily harm upon the President of the United States * * *." The statute was held constitutional upon its face, the Court in effect holding that a true threat is not constitutionally protected speech. On the facts, however, the Court concluded that the statement made by the defendant under the circumstances then existing was not a "true threat." In the course of a protest rally, an 18 year old boy entered into a small group to discuss police brutality. The defendant, who had been called for military service, said, "I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J.—They are not going to make me kill my black brothers." The Court laid emphasis on the facts that (a) the defendant stated a condition which he asserted would never occur, and (b) that at the conclusion of the statement defendant and his hearers all laughed. The Court concluded that the statement was not a true threat and indeed was no more than "a kind of very crude offensive method of stating a political opposition to the President."

In the instant case the defendant Hotham, while temporarily in a detention cell [1] at the Winthrop police station under arrest for intoxication, stated, "When I get out of this jail, I'm going to go home, get my 30–40 Craig out of the closet, and I'm going to kill me some f--- police officers. Isn't that right, Captain Cook?" The jury could properly infer that this threat was directed at the police officers in attendance in the adjoining room and particularly at Trooper Cook, the arresting officer. There is a substantial state interest in having police officers able to perform their duties unhampered by the disquiet, harassment or intimidation which may stem from such threats to their lives and safety. The jury could properly conclude on the basis of credible evidence that the statement was not made in jest but in deadly earnest and that it contained a promise of evil to be taken seriously by the ordinary hearer. In short, the jury could and did find a true threat, not constituting constitutionally protected speech but properly prohibited by statute.

The appellant contends that a statement which if uttered by a sober man might well have been a crime should not be so viewed when it comes from the mouth of a man visibly under the influence of intoxicating liquor. The evidence disclosed that the defendant and his cellmates, though loud and obscene, were never incoherent. The maxim "ex vino veritas" comes to mind. The jury could properly conclude that a man, fortified by false courage and freed of inhibitions and social restraints by an over-indulgence in intoxicating liquors, would be more likely to state openly his true intention to seek vengeance than would a more cautious sober man. The ordinary hearer is well advised to take such threats seriously. The influence of liquor offers no guaranty that the threat will not be carried out. Over the years this Court has had occasion to examine the records in countless criminal appeals in which it was disclosed that the appellant was drinking heavily in the hours before his crime was committed. We think that in assessing whether or not the statement in this case

---

1. The defendant was then awaiting bail which was subsequently provided.

was a true threat as we have defined it, the appellant's condition as to sobriety is a factor which tends to militate against rather than for any claim that this apparent threat was in reality mere idle talk or jest. We are satisfied that the evidence and the inferences reasonably to be drawn therefrom fully support the jury's verdict.

Other points sought to be raised by appellant are without merit and require no discussion here.

Appeal denied.

All Justices concurring.