**STATE of Maine**

**v.**

**Daryl DRAKE.**

Supreme Judicial Court of Maine.

Sept. 12, 1974.

---

Donald H. Marden, County Atty., Augusta, for plaintiff.

Southard, Hunt & Hebert by Frank E. Southard, Jr., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

WEATHERBEE, Justice.

On April 5, 1973 a complaint was issued from the District Court in Augusta charging the Defendant with a violation of 17 M.R.S.A. § 3953, the disorderly conduct statute.[1] The relevant language of the complaint reads as follows:

"That, on or about the 1st day of April, 1973, in the City of Augusta, County of Kennebec and State of Maine, the above named defendant, Daryl

1. "Any person who shall by any offensive or disorderly conduct, act or language annoy or interfere with any person in any place or with the passengers of any public conveyance, although such conduct, act or language may not amount to an assault or battery, is guilty of a breach of the peace and shall be punished by a fine of not more than $100 or by imprisonment for not more than 6 months, or by both."

Drake, did then and there create a breach of the peace by then and there doing a certain offensive act to the annoyance of one Richard Arnold, the said Richard Arnold being then and there an officer of the Maine State Police, to wit, did point his middle finger in an upward gesture, said act being an obscene gesture."

On June 29, 1973 the Defendant's counsel orally moved to dismiss the complaint. After hearing on this motion, the Judge of the District Court granted the motion and dismissed the complaint. He stated "that the complaint does not allege a violation of law for that it fails to allege to whom the alleged gesture (upward) was made or directed and further that such gesture (upward) per se is meaningless and of no legal import."

From this order the State has appealed to the Law Court under 15 M.R.S.A. § 2115–A and M.D.C.Crim.R., Rule 37. We deny the appeal.

The heart of the appellant's main argument[2] is that the Judge erred because the complaint does show facts which could constitute an offense under 17 M.R.S.A. § 3953. Under our procedural rules, the complaint is to include a "plain, concise, and definite written statement of the *essential facts constituting* the offense . . . . " M.D.C.Crim.R., Rule 3. (Emphasis added.)

■ Twice in the past three years our Court has ordered the dismissal of complaints for violations of the disorderly conduct statute. In State v. White, Me., 280 A.2d 810 (1971) the complaint was found to be defective because of its failure to include the acts alleged to have constituted a violation of the statute. We noted in *White* that the complaint must do more than merely recite the statutory language in order to inform the defendant and the court of the "conduct or language" supposedly amounting to disorderly conduct.

We again dismissed a disorderly conduct complaint in State v. Good, Me., 308 A.2d 576 (1973). That complaint, though more specific than the one in *White*, still gave no clear indication of what conduct the State charged to have been criminal. The complaint there alleged that a breach of the peace had been committed by "language so vile and obscene it would offend common decency to describe it . . . . ". It also asserted that the defendant was "disorderly" for using "offensive language" and refusing to leave a certain filling station "to the annoyance of customers at said station". 308 A.2d at 577. We held that the complainant's characterization of the defendant's otherwise undisclosed language as vile, obscene and offensive did not sufficiently inform the defendant or the Court as to the specific conduct charged to have been disorderly.

The Judge's order here states that "the complaint does not allege a violation of law" because it does not show to whom the gesture was directed and because the gesture itself is legally meaningless.

The Judge's reasons for dismissing the complaint approach our own feelings about its inadequacy.

■ While a gesture may under some circumstances communicate an obscene and offensive message as effectively as words, it appears probable that certain gestures may have commonly understood meanings and connotations in some geographical areas and among some social groups and not in other areas or among other social groups. Therefore, we believe that in order to be adequate, such a complaint must

---

2. The State also claims that the Judge had no authority to dismiss this complaint under M.D.C.Crim.R., Rule 48(b), which allows dismissal if there is "unnecessary delay in bringing a defendant to trial." That rule has no bearing on this case. The authority of a Judge to dismiss for failure of the complaint to allege an offense is implicit in M.D.C.Crim.R., Rule 12(b).

allege the significance and meaning which the gesture would be expected to convey to the observor.

■ Furthermore, the other immediate circumstances under which such an act occurs are essential in order to allow a court to discern the impact upon the public peace to be expected from such behavior. The result of the impact may conceivably range from good-humored acceptance under some circumstances to the most intense public indignation under others. A private exchange between friends of obscene but good natured insults, reasonably expected to be received in the same spirit as that in which it was given and reasonably expected to be for no other eyes but those of the recipient might not be criminal, yet, the same gesture, given with the expectation of wounding the sensibilities of another in the presence of persons to whose respect the recipient is entitled, might constitute disorderly conduct. Whether the gesture is directed toward a particular individual or not may be one of these circumstances necessary to the evaluation of possible criminality of the conduct. *See* Hess v. Indiana, 414 U.S. 105, 94 S.Ct. 326, 38 L. Ed.2d 303, 307 (1973). In other words, this particular gesture could constitute disorderly conduct under some circumstances and not under others.

But we must remember that even crudity of expression may be constitutionally protected. Hess v. Indiana, supra.

■ It is axiomatic that freedom of expression falls under the protective mantle of both the United States and Maine Constitutions. U.S.Const. amend. I; Me. Const. art. I, § 4. Certain nonverbal conduct is capable of categorization as expression which may be constitutionally protected. *See, e. g.,* Cohen v. California, 403 U. S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); Tinker v. Des Moines School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966). Of course, certain "speech" alleged to be abusive may fall outside this constitutional area if it is equated with "fighting words" under the principles of Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (most recently reaffirmed in Lewis v. New Orleans, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974)).

■ As we pointed out in State v. Good, supra, in an instance where constitutional free speech principles may be involved in the context of a disorderly conduct situation, it is particularly necessary that the criminal complaint allege essential facts of the offense, *i. e.,* the allegedly criminal acts and the circumstances under which the acts took place.[3] Only then can the court determine if the "disorderly" acts are offensive to public decency under the statute and whether they are afforded constitutional protection. The Defendant must also be apprised of this information to prepare a proper defense. State v. Strout, 132 Me. 134, 167 A. 859 (1933).

■ Because this complaint fails to allege circumstances under which the giving of the "obscene gesture" would be a criminal act, the Judge acted correctly in granting the motion to dismiss.

The entry will be:

Appeal denied.

All Justices concurring.

---

3. By this statement we do not intend to force the drafting of long, technical complaints contrary to the spirit of Rule 3. We do believe that the distinctive nature of disorderly conduct prosecutions mandates that a greater quantity of relevant information be specified so that the criminal character, if any, of the acts can be determined.