**STATE of Maine**

v.

**Reginald MICHAUD.**

Supreme Judicial Court of Maine.

Argued Nov. 7, 1983.

Decided March 5, 1984.

James R. Erwin, Anita M. St. Onge (orally), Asst. Attys. Gen., Augusta, for plaintiff.

Solman, Page & Hunter, P.A., E. Allen Hunter (orally), Caribou, for defendant.

Before McKUSICK, C.J., NICHOLS, ROBERTS, WATHEN, GLASSMAN, and SCOLNIK, JJ., and DUFRESNE, A.R.J.

DUFRESNE, Active Retired Justice.

The defendant, Reginald Michaud, appeals a conviction for terrorizing, a Class D crime, 17–A M.R.S.A. § 210 (1983),[1] follow-

---

1. 17–A M.R.S.A. § 210 provides in pertinent part:

1. A person is guilty of terrorizing if he communicates to any person a threat to com-

mit or to cause to be committed a crime of violence dangerous to human life, against the person to whom the communication is made or another, and the natural and probable conse-

ing a jury trial in Superior Court (Aroostook County). He contends, first, that the indictment charging him with terrorizing was constitutionally insufficient, and, second, that the justice presiding at his trial committed manifest error in instructing the jury as to the elements of the offense. We agree with the defendant's second contention, and, therefore, vacate his conviction.

On July 8, 1982, Reginald Michaud was indicted for assault on an officer (one Kenneth Michaud, the Chief of Police of Fort Kent) in violation of 17–A M.R.S.A. § 752–A, and in the second count of the indictment for terrorizing in violation of 17–A M.R.S.A. § 210, the incidents underlying the charges having occurred on May 26, 1982. A separate complaint against the defendant of assault on one Bertrand Ouellette for spitting in that person's face, which allegedly happened in the course of those incidents, was consolidated for trial in the Superior Court and tried with the other two charges before the same jury. The defendant was found guilty of terrorizing, but not guilty of assault on Mr. Ouellette and not guilty of assault on Officer Michaud. As stated previously, we are sustaining the defendant's appeal from the terrorizing conviction.

The testimony adduced at trial showed that, while attending a carnival in Fort Kent on May 26, 1982, the defendant was involved in several unpleasant confrontations with the Chief of Police and patrons of the carnival. One of these confrontations gave rise to the charge of assault on Mr. Ouellette.

Another confrontation between the defendant and Chief Michaud of the Fort Kent Police Department resulted in a fight. Although the testimony was in conflict as to who started the fight, all witnesses agreed that the defendant was ultimately subdued by Chief Michaud, handcuffed, and then taken to police headquarters. This incident gave rise to the charge of assault on the officer.

Because the defendant had sustained facial injuries, he was taken from the police station to the hospital. At the hospital, Michaud allegedly made the following statement outside the presence of Chief Michaud to another officer of the Fort Kent Police Department, one Robert Daigle:

I'm going to kill all of you fucking pigs ... And Doody [Chief Michaud] I'm going to kill him slow even if it costs me my own life.

This was the basis for the charge of terrorizing.

### I

The count for terrorizing, under which the defendant was convicted, reads as follows:

That on or about May 26, 1982, at Fort Kent, County of Aroostook and State of Maine, Reginald Michaud did communicate to Robert Daigle, a threat to commit a crime of violence dangerous to human life, to wit: the crime of murder by threatening to kill Kenneth Michaud, the natural and probable consequence of said threat being to place the said Robert Daigle in reasonable fear that said crime would be committed.

Although the language of the indictment closely tracks that of the terrorizing statute, 17–A M.R.S.A. § 210, the defendant contends that it is, nevertheless, fatally defective under our decision in *State v. Sondergaard*, 316 A.2d 367 (Me.1974). The failure to set forth in express terms some specific circumstance or special relationship whereby the proffered threat could be viewed as reasonably likely to induce "alarm" or "fear" to one's disquiet in some person, he asserts, voided the indictment for omitting to allege a necessary ingredient of the offense of terrorizing.

---

quence of such a threat, whether or not such consequence in fact occurs, is:

 A. To place the person to whom the threat is communicated or the person threat-

ened in reasonable fear that the crime will be committed; or

 * * * * * *

 B. ...

■ We note that the defendant did not raise this objection at the trial level. Of course, defects in an indictment's allegations when they do not rise to the jurisdictional level are waived by a defendant who chooses to go to trial without raising his objections to the indictment. *See Vigue v. State,* 243 A.2d 59 (Me.1968); Rule 12, M.R. Crim.P. On the other hand, the State must allege in an indictment every essential element of the crime charged; the accusation must set out the facts which constitute the necessary ingredients of the offense. It is in this latter instance a matter of jurisdiction. *State v. Blais,* 391 A.2d 1198 (Me. 1978); *State v. Thibodeau,* 353 A.2d 595 (Me.1976). *See also State v. Porter,* 384 A.2d 429, 433 (Me.1978).

■ At trial level, lack of jurisdiction or the failure of the indictment, information, or complaint to charge an offense shall be noticed and acted upon by the court at any time during pendency of the proceeding. Rule 12(b)(2), M.R.Crim.P. In the Law Court, in criminal as in civil appeals, questions raising jurisdiction of subject matter will be examined by the Court to determine the court's own jurisdiction as well as that of the lower court, even though such issue of jurisdiction was not noticed or suggested at the trial level and is being raised, as in the instant case, for the first time on appeal. *See Olsen v. French,* 456 A.2d 869, 871 (Me.1983); *Jones v. York,* 444 A.2d 382, 384 (Me.1982); *Charles Cushman Co. v. Mackesy,* 135 Me. 490, 492, 200 A. 505, 507, 118 A.L.R. 148 (1938).

In *State v. Sondergaard,* we assessed the validity of an indictment charging a violation of 17 M.R.S.A. § 3701 (1965), *repealed*

by P.L.1975, ch. 499 § 20 (effective May 1, 1976), a predecessor statute to 17–A M.R. S.A. § 210. The earlier statute required that a threat take place,[2] but contained no requirement, as does the current section 210, that "the natural and probable consequence" of the threat be to "place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed."[3] 17–A M.R.S.A. § 210. In *State v. Hotham,* 307 A.2d 185, 186 (Me.1973), a case decided prior to *Sondergaard,* the Law Court construed 17 M.R.S.A. § 3701 to require proof that "the reasonable and natural effect" of the alleged threat would be to cause the ordinary hearer "alarm" or "fear ... to his disquiet." *Id.* 307 A.2d at 186. The court grafted this element onto § 3701 so as to save the statute from what the court perceived as unconstitutional overbreadth under the first amendment. By interpreting the statute to require this additional element the court sought to limit the reach of the statute to speech which by its "very utterance inflict[s] injury or tend[s] to incite an immediate breach of the peace." *Id.* 307 A.2d at 186 (quoting *Chaplinsky v. State of New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942)).

But, in *Sondergaard,* the court was presented with a challenge to an indictment which, as in the instant case, charged the defendant with having made a threatening communication to a person other than the object of the threat.[4] However, unlike the indictment now before the court, the indictment there made no reference to the impact of the threatening communication on the hearer or the object of the threat. We

---

**2.** 17 M.R.S.A. § 3701 provided in pertinent part:

Whoever makes, publishes or sends to another any communication, written or oral, containing a threat to injure the person or property of any person shall be punished by a fine of not more than $500 or by imprisonment for not more than 5 years, or by both.

**3.** 17–A M.R.S.A. § 210 also creates a Class C offense if "the natural and probable consequence" of the threat is to "cause evacuation of

a building, place of assembly or facility of public transport."

**4.** The indictment at issue in *Sondergaard* read:

On or about May 28, 1972 in the Town of Whitefield, Lincoln County, Maine, Jeffrey Sondergaard did make to another, to wit, Joanne Lavoie an oral threat to injure one Robert S. Barnes, to wit, by then and there stating that he, the said Jeffrey Sondergaard was going to shoot the said Robert S. Barnes.
316 A.2d at 368.

found the indictment to be insufficient, because it failed to allege any circumstances showing a reasonable likelihood that "alarm" or "fear ... to his disquiet" would be caused in any person as a result of the threat.[5] We suggested this requirement could be met either by allegation of a special relationship between the hearer of the threat and the object of the threat—such that it could be thought reasonably likely that the hearer would be caused alarm or anxiety by a "promise of evil" to the object of the threat—or by allegation of circumstances indicating a probability that the object of the threat would learn of the threat and thereby be caused fear or alarm. *State v. Sondergaard,* 316 A.2d at 370.

■ The defendant argues that the instant indictment is invalid under *Sondergaard,* because it fails to allege the required circumstances, such as a special relationship between Robert Daigle and Chief Michaud or some other circumstance, making it reasonably likely that some person would be caused "alarm" or "fear ... to his disquiet" by the alleged threat. In so arguing, the defendant ignores the significant differences between the instant case and *Sondergaard.* Unlike the indictment in *Sondergaard,* the indictment in this case expressly alleges that the "natural and probable consequence" of the threat to murder Chief Michaud that was communicated to Robert Daigle was "to place the said Robert Daigle in reasonable fear that said crime would be committed." This allegation closely tracks the language of 17-A M.R.S.A. § 210 that has been held to be coextensive with the element of "alarm" or "fear ... to his disquiet" judicially grafted upon former section 3701. *State v. Porter,* 384 A.2d 429, 433 (Me.1978). *See also State v. Fischer,* 398 A.2d 402, 405 (Me.1979). Thus, unlike the indictment in *Sondergaard,* the instant indictment, couched, as it is, in the language of the governing statute, clearly shows from this specific allegation that the threatening communication in question is outside the sphere of constitutionally protected speech.

■ In prosecutions for statutory offenses, the criminal complaint or indictment, to be sufficient must by the use of language of ordinary meaning inform the defendant of all the factual essential elements constituting the crime charged. *State v. Arnold,* 421 A.2d 932, 934 (Me. 1980). Ordinarily, it suffices if the criminal pleading, the complaint, indictment or information, describes the offense in the words of the statute or *in language of substantial equivalence. State v. Gordon,* 437 A.2d 855, 857 (Me.1981); *State v. Thibodeau,* 353 A.2d 595, 601 (Me.1976); *State v. Dunn,* 136 Me. 299, 301, 8 A.2d 594, 596 (1939).

Indictments for terrorizing under 17-A M.R.S.A. § 210 were upheld as sufficient and valid when couched in the terms of the statute, as in the instant prosecution, in cases where the hearer of the threatening communication was also the object of the threat. *See State v. Daley,* 411 A.2d 410 (Me.1980); *State v. Sandberg,* 387 A.2d 605 (Me.1978). In such situations where the alleged terrorizer communicates the threat to the potential victim of the threatened violence, the communication in and of itself infuses the evil menace with such reasonable likelihood of apprehension as to engender in the recipient, as a natural and probable consequence of the threat, reasonable alarm or fear to one's disquiet within the scope of the terrorizing statute.

■ Even though the present indictment charges the defendant with terrorizing for communicating to one Robert Daigle the threat to kill and murder a third party in the person of Kenneth Michaud, we now

---

5. We noted that the impact of a threat on a third-party listener who is not the object of the threat is far from certain:

> If, idealistically, each human being should strive to love every other as himself, the realities of day-to-day living do not justify the imposition of criminal penalties on a basis which attributes a universal empathy of one human being for the potential plight of any or every other human being.
>
> *State v. Sondergaard,* 316 A.2d at 370.

hold that, where, as in the instant case, the indictment further alleges in the terms of the statute that "the natural and probable consequence of said threat [was] to place the said Robert Daigle in reasonable fear that said crime would be committed," no further allegation of special relationship between the parties or other surrounding circumstance need be stated to constitute a valid accusation of terrorizing. The present statutory terminology embodied in the indictment is in substantial degree an equivalent and sufficient articulation of the existence of that special circumstance required by *Sondergaard* under the previous section 3701. The indictment was never meant to be, and need not be, a recital of the evidence. *State v. Charette,* 159 Me. 124, 127, 188 A.2d 898, 900 (1963); *State v. Dunn,* 136 Me. at 301, 8 A.2d at 596. We have no doubt that the indictment adequately informed the defendant "of the crime charged and the nature thereof, so that he could properly prepare his defense to the accusation and be protected against a subsequent prosecution for the same cause." *State v. Pierce,* 438 A.2d 247, 250 (Me.1981).

## II

■■■ The defendant's second argument is that the presiding justice's instructions to the jury with respect to the elements of terrorizing were so misleading as to constitute reversible error. Because of the defendant's failure to raise the alleged error below, Rule 30(b), M.R.Crim.P., the instructions must be reviewed under the obvious error standard of M.R.Crim.P. 52(b). *State v. Judkins,* 440 A.2d 355, 358 (Me.1982); *State v. Westphal,* 349 A.2d 168, 171 (Me.1975). This standard requires the reviewing court to make "a penetrating inspection of all the circumstances of the trial to determine whether there exists 'a seriously prejudicial error tending to produce manifest injustice.'" *State v. Daley,* 440 A.2d 1053, 1055 (Me.1982) (quoting *State v. Baker,* 409 A.2d 216, 219 (Me.1979)). Manifest error will be found only if "there exists a 'reasonable possibility' that a complete and adequate instruction would have result-

ed in a different verdict." *State v. Bahre,* 456 A.2d 860, 865 (Me.1983).

The jury was instructed on the elements of terrorizing at four different times. None of those instructions was both complete and correct. For the jurors to have properly understood the elements of terrorizing, it would have been necessary for them to pick out the correct portions of each partially inaccurate instruction and synthesize the elements of the crime for themselves. We must review these instructions in their entirety to determine if, due to their potential for juror misunderstanding, the overall effect infringed upon the defendant's substantial rights under M.R. Crim.P. 52(b). *State v. Cote,* 462 A.2d 487, 490 (Me.1983).

■■■ In his initial instruction the presiding justice told the jury that it could find the defendant guilty of terrorizing *only if* it found "that a threat to commit the crime of murder was made as a communication against the person to whom the communication is made." Thus, although the indictment had charged that a threat against Chief Michaud was communicated to Robert Daigle, the court instructed the jury that it had to find the hearer of the threat and the object of the threat to be one and the same for proof of violation of the terrorizing statute. The prosecutor pointed out the error to the presiding justice, who admitted that he was confused. However, in attempting to reinstruct the jury, the court left out any elucidation upon one of the elements of the offense—that the natural and probable consequence of the threat must be "to place the person to whom the threat is communicated or the person threatened in reasonable fear that the crime will be committed." 17–A M.R.S.A. § 210. He told the jury:

A threat that is made to the person communicated or in respect to committing a crime of violence against either the person to whom the communication is made or another person is *sufficient in terms of the elements of terrorizing* if

believed beyond a reasonable doubt. So I apologize if I misled you.

The allegations of the indictment are that communications made were to Robert Daigle to commit the crime of murder against Kenneth Michaud, *and those are the elements* rather than the crime of murder against Robert Daigle. Okay. (emphasis added).

Even though the presiding justice corrected the particulars of the actual charge made against the defendant, nevertheless, in instructing the jury to the effect that, *in terms of the elements of terrorizing,* it is sufficient for conviction if the jury believed beyond a reasonable doubt that the threat was made to the person to whom it was communicated, whether the threat concerned the commission of a crime of violence against that person or against some third party, the court was inviting the jury to reach a verdict of guilty without any consideration being given to all the elements of the offense.

The presiding justice was given a further opportunity to correct this error when the jury asked to be reinstructed on the terrorizing charge. In response to this request, the presiding justice properly included the element omitted in the previous instruction, but this time he told the jury that it could consider whether the natural and probable consequence of the threat would be to cause either Robert Daigle or Chief Michaud, or one in their position, to have a reasonable fear that the crime would be committed. The jury was, therefore, free to consider the effect the threat would have on someone in the position of Chief Michaud. Although, as the State correctly points out, section 210 is applicable when the natural and probable consequence of the threat is to place either the hearer or the object of the threat in reasonable fear that the crime will be committed, the indictment charged only that the consequence of the threat would be to put Robert Daigle in fear. Furthermore, there was no evidence that the threat was ever communicated to Chief Michaud. Under these instructions the jury was invited to speculate as to what the effect on Chief Michaud would have been, had he heard the threat, a circumstance completely irrelevant in this record.

The jury asked to be reinstructed a second time. This time the jury asked if a finding that a threat to kill had been made was necessary for a verdict of guilt. The very fundamental nature of this question, following as it did three earlier attempts by the presiding justice to properly instruct the jury as to the elements of the offense, is a good indication of the extent of the jury's confusion.

 We have recognized that "a failure to properly instruct the jury on each of the essential elements of the offense charged affects the defendant's substantial rights under M.R.Crim.P. 52(b)." *State v. Earley,* 454 A.2d 341, 343 (Me.1983). Here, the confusion created by the error in the initial instructions was compounded by the court's repeated incomplete and inaccurate attempts of reinstruction thereafter. A verdict based on a misconception of the law is against the law, and to allow it to stand is not justice. *State v. Bahre,* 456 A.2d at 865; *State v. Wright,* 128 Me. 404, 407, 148 A. 141 (1929). At no point in time can we fairly conclude that the jury was adequately instructed on the relevant law respecting all the elements of the crime of terrorizing. The instructions in the instant case, even when considered as a whole, were so fraught with potential to confuse, that the jury may have based their verdict on erroneous principles of law. A conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue. *State v. Bahre,* 456 A.2d at 865; *Bollenbach v. United States,* 326 U.S. 607, 613, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

The entry will be:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

All concurring.