**STATE of Maine**

v.

**Stanley W. JANISCZAK.**

Supreme Judicial Court of Maine.

Submitted on Briefs April 27, 1990.

Decided Aug. 17, 1990.

William R. Anderson, Dist. Atty., Geoffrey Rushlau, Asst. Dist. Atty., Bath, for plaintiff.

David S. Severance, Kezar Falls, for defendant.

Before ROBERTS, WATHEN,
GLASSMAN, CLIFFORD, HORNBY *
and COLLINS, JJ.

COLLINS, Justice.

Stanley W. Janisczak appeals from a judgment of conviction entered after a jury trial in the Superior Court (Sagadahoc County, *Bradford, J.*) for obstructing government administration in violation of 17–A M.R.S.A. § 751 (1983). Janisczak argues that the evidence of his actions presented at trial was insufficient to sustain this conviction because his actions deserve constitutional protection under both the First Amendment to the Federal Constitution and article I, § 4 of the Maine Constitution. We agree with the defendant, and we vacate the judgment of conviction.

I.

The case on appeal arises from the disruptive conduct in which Janisczak engaged in the town of Richmond on December 26, 1988, while protesting the arrest of Nicholas Kovtuschenko by several police officers.[1] Early that evening, Officer George Mele of the Richmond Police pulled over a van with a blown-out tail light on Main Street in Richmond. The van was driven by Nicholas Kovtuschenko. While running a license check, Officer Mele discovered that Kovtuschenko's driver's license was then under suspension. When Officer Mele informed Kovtuschenko that he was under arrest for operating with a suspended license and asked him to step out of the motor vehicle, Kovtuschenko refused, and quickly rolled up the windows and locked the doors of the van.

In response to Officer Mele's request for assistance, four other officers, including Corporal Bill Robbins of the Richmond Po-

lice, soon arrived at the scene. Kovtuschenko remained locked in his van for an hour to an hour-and-a-half, intermittently yelling and blowing the horn. Despite repeated attempts, the officers were not able to persuade Kovtuschenko to surrender himself. The officers did not want to break into the vehicle for fear of hurting a child inside the van with Kovtuschenko. As time wore on, a crowd of 35 to 40 spectators gathered directly across the street from the van. Although the testimony is unclear on this point, it appears that eventually about 15 spectators also assembled on the side of the street where the van was stopped. Many members of the crowd began shouting at the police officers, telling them to leave Kovtuschenko alone. At some point the defendant Janisczak joined the crowd; he was notable because he was "one of those hollering" early on.

A short while after the child had been safely passed out of a van window to a bystander, Corporal Robbins wedged a van window open with a flashlight and attempted to reach down inside to unlock the van door. Kovtuschenko seized Robbins's arm and twisted it painfully while rolling up the window, successfully foiling Corporal Robbins's attempt to open the door. Corporal Robbins then used another flashlight to break the van's window. With the help of two other officers, Corporal Robbins opened the van's door and pulled Kovtuschenko from the van. Kovtuschenko, who is a large man according to Officer Mele's testimony, resisted being placed in handcuffs and refused to put his arms behind his back. All five of the officers present were needed to wrestle Kovtuschenko to the ground, and it took between a minute and a minute-and-a-half to place handcuffs on him.

While the police were struggling to control Kovtuschenko, Janisczak "bolted" from the crowd of spectators up to the

---

* Hornby, J., sat at oral argument and participated in the initial conference but resigned before this opinion was adopted.

1. For his actions on the evening of December 26, 1988, Nicholas Kovtuschenko was convicted for assault, 17–A M.R.S.A. § 207 (1983 & Supp.

1989), and operating a vehicle after suspension, 29 M.R.S.A. § 2184 (1978 & Supp.1989) after a separate trial unrelated to the present appeal. We affirmed these convictions in *State v. Kovtuschenko,* 576 A.2d 206 (Me.1990).

officers, shouting. The crowd, now 30–40 strong, was "hollering" and "all screaming" at the police officers. Janisczak stood one or two feet behind Corporal Robbins yelling at the officers. According to Corporal Robbins he appeared to be "very hostile" as he shouted "you don't have the right to do that," and "you are violating his rights," and "don't beat on him." [2] Robbins testified that Janisczak called the officers abusive names, including "something [like] you fucking assholes or you jerks— very vulgar language and just offensive language." Janisczak voiced his protests throughout the period in which the officers struggled to place handcuffs on Kovtuschenko. One officer testified that Janisczak's yelling and name calling broke his concentration. When Robbins believed that the other officers had Kovtuschenko in control, he turned to Janisczak and ordered him, by name, to "get the hell out of here." Janisczak stepped within inches of Robbins, and within two or three feet of Kovtuschenko, and said "fuck you." Corporal Robbins immediately placed Janisczak under arrest. At no point did Janisczak make physical contact with the officers before he was placed under arrest.

## II.

■ Janisczak argues that there was insufficient evidence presented at trial to sustain his conviction for obstructing government administration under 17–A M.R.S.A. § 751. A criminal conviction will be upheld on appeal if the evidence, viewed in the light most favorable to the prosecution, is such that a rational fact-finder could find each element of the offense beyond a reasonable doubt. *State v. Barry,* 495 A.2d 825, 826 (Me.1985). The portion of the obstructing government administration statute relevant to this appeal states that a person "is guilty of obstructing government administration if he uses ... intimidation ... or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function." [3] There is no dispute that the evidence presented supports a finding that the police officers were public servants in the process of performing an official function. *See State v. Judkins,* 440 A.2d 355, 359 (Me.1982) (act of making an arrest constituted official function within meaning of section 751 even though the order officer was executing was illegal). Therefore we confine our review to whether there was adequate evidence that Janisczak, with the intent to interfere with the arrest, either intimidated the officers present or engaged in a criminal act.

■ Our review of the record indicates that there was insufficient evidence of intimidation presented to sustain Janisczak's conviction for obstructing government administration on that basis. Intimidation may be defined as "[u]nlawful coercion, extortion, duress, or putting in fear." Black's Law Dictionary 736 (5th ed.1979).[4] No reasonable trier of fact could find on the evidence presented that Janisczak's actions constituted unlawful coercion, extortion, or duress. Further, although all five of the officers who were present at the scene testified at trial, none stated that he was put in fear by the defendant. Nor did any officer present testimony from which a jury reasonably could infer that one or more of the officers was afraid of Janisczak or his actions.

We now direct our attention to whether there was sufficient evidence to substantiate a finding that Janisczak engaged in a criminal act with the intent to obstruct the arrest. The Superior Court instructed the jury that the only criminal act it needed to

---

**2.** There was no evidence presented demonstrating that the police officers beat Kovtuschenko or used force in excess of that necessary to place him under arrest.

**3.** 17–A M.R.S.A. § 751(1) provides in full:

A person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function.

**4.** Similarly, Webster's New Twentieth Century Dictionary 962 (2d ed. 1983) provides the following definitions of the verb intimidate: "1. to make timid; to make afraid; overawe. 2. to force or deter with threats or violence; to cow."

consider was disorderly conduct under 17–A M.R.S.A. § 501(1)(A) (1983 & Supp. 1989),[5] which prohibits intentionally or recklessly causing annoyance to others in a public place by intentionally making loud and unreasonable noises.

Janisczak argues that the conduct for which he could be found criminally liable under the disorderly conduct statute—intentionally making loud and unreasonable noises—falls, in these circumstances, within the scope of constitutionally protected speech, and therefore evidence of his conduct may not be used to convict him. We agree.

As a preliminary point, we observe that Janisczak's right to freedom of speech is placed directly at issue in the circumstances of this case by the definition of disorderly conduct in section 501(1)(A). This section does not prohibit any actions other than the making of "loud and unreasonable noises," except to the extent that other actions may contribute to the "unreasonable" character of the noises made. The record reflects that Janisczak moved up to within several feet of an ongoing and physical arrest, and shouted his protests in crude and vulgar language. Although Janisczak's close proximity to the officers as they wrestled with Kovtuschenko may have made Janisczak's shouts more "unreasonable" under section 501(1)(A) than his shouts would have been had he remained at a greater distance from the area of the arrest, this section of the disorderly conduct statute was not intended, as we read it, to make criminal the act of standing close to an arrest. Given that the only noises Janisczak made were his vulgar and abusive protests, the only criminal act that he could have committed under this section was his enunciation of these verbal protests. The act of verbally protesting a police arrest falls within the scope of our constitutional protections over speech, *see State v. John W.*, 418 A.2d 1097, 1108 (Me.1980), unless, as discussed below, the State has a compelling interest in prohibiting the particular speech used.[6]

In *John W.*, a case in which we vacated a conviction under section 501(2) of the disorderly conduct statute[7] of a juvenile who verbally harassed police officers after they arrested his sister, we examined the scope of our constitutional protections of speech:

---

**5.** 17–A M.R.S.A. § 501(1)(A) provides that a person is guilty of disorderly conduct if:

1. In a public place, he intentionally or recklessly causes annoyance to others by intentionally:

A. Making loud and unreasonable noises.

The Superior Court did not instruct the jury to consider whether Janisczak engaged in a criminal act by violating subsection 2 of the disorderly conduct statute, and the prosecution did not object to the absence of such an instruction. *See* 17–A M.R.S.A. § 501(2). Further, the State has not argued on this appeal that Janisczak's conviction should be affirmed because he violated subsection 2 of the disorderly conduct statute. Accordingly, we do not consider whether Janisczak's conduct would have been constitutionally protected under subsection 2 of the disorderly conduct statute.

**6.** We also note as a preliminary matter that statutes restricting the time, place, and manner in which speech is disseminated without regard to the content of the speech that is restricted may be upheld under the Federal Constitution where they serve a significant governmental interest and where ample alternative channels for communication of the information are available to the speaker. *See Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640,

647–48, 101 S.Ct. 2559, 2563–64, 69 L.Ed.2d 298, 306–07 (1981) (quoting *Virginia Pharmacy Board v. Virginia Citizens Consumer Council*, 425 U.S. 748, 771, 96 S.Ct. 1817, 1830, 48 L.Ed.2d 346, 363–64 (1976)); *Grayned v. City of Rockford*, 408 U.S. 104, 115–16, 92 S.Ct. 2294, 2302–03, 33 L.Ed.2d 222, 231–32 (1972); *Cox v. New Hampshire*, 312 U.S. 569, 576, 61 S.Ct. 762, 765, 85 L.Ed. 1049, 1053 (1941). However, as Maine's obstructing government administration statute clearly states that it applies only where the violator's intention is to obstruct government officials in the course of their duty, an application of this statute to verbal protests cannot be deemed content-neutral. Therefore, the time, place, and manner test for the constitutionality of content-neutral restrictions on speech does not apply here.

**7.** 17–A M.R.S.A. § 501(2) (1983) provides that a person is guilty of disorderly conduct if:

2. In a public or private place, he knowingly accosts, insults, taunts or challenges any person with offensive, derisive or annoying words, or by gestures or other physical conduct, which would in fact have a direct tendency to cause a violent response by an ordinary person in the situation of the person so accosted, insulted, taunted or challenged.

Both article I, § 4 of the Maine Constitution and the first amendment of the United States Constitution protect the people against governmental encroachment on their freedom of speech. The Maine Constitution is no less restrictive than the Federal Constitution. *Opinion of the Justices*, 306 A.2d 18, 21 (Me.1973). Our fundamental interest in free speech "demands the existence of a compelling governmental interest to justify legislative restrictions upon it." *Id.* at 21. Such a compelling governmental interest has been found to exist in the prohibition of ... fighting words, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *State v. Drake*, Me., 325 A.2d 52, 55 (1974). "[Words] which by their very utterance inflict injury or tend to incite an immediate breach of the peace do not enjoy constitutional protection." *State v. Hotham*, Me., 307 A.2d 185, 186 (1973), *quoting Chaplinsky v. New Hampshire*, 315 U.S. at 572, 62 S.Ct. at 769 [86 L.Ed. 1031] (1942).

*Id.* at 1101.

 In keeping with these constitutional protections, criminal statutes affecting speech must be subjected to "narrow judicial interpretation" in order to insure that they prohibit only speech that is not constitutionally protected. *Id.* at 1101 (citing *State v. Sondergaard*, 316 A.2d 367, 369 (Me.1974)).[8] On one hand, "language which is merely distasteful cannot be punished" under either Maine's disorderly conduct statute or Maine's obstruction of government administration statute. *See id.* at 1102 (citing *State v. Mockus*, 120 Me.

84, 113 A. 39 (1921)).[9] Thus, if Janisczak's words were merely vulgar they must be accorded constitutional protection, even if they reasonably could be found to have "annoyed" the police officers within the meaning of the disorderly conduct statute. On the other hand, the State may properly prohibit "fighting words" and "speech that produces or is likely to produce a clear and present danger of substantive evils" that Maine may constitutionally seek to prevent. *Id.* (citing *State v. Porter*, 384 A.2d 429, 432 (Me.1978)); *City of Portland v. Jacobsky*, 496 A.2d 646, 655 (Me.1985).[10] Accordingly, if Janisczak's words were fighting words or presented a clear and present danger of evils that the State may prevent, he is not entitled to constitutional protection and his conviction must stand. To determine whether Janisczak's words deserve constitutional protection, we must inquire

into the imminence and magnitude of the danger said to flow from the particular utterance and then ... balance the character of the evil, as well as its likelihood, against the need for free and unfettered expression. The possibility that other measures will serve the State's interest should also be weighed.

*Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 843, 98 S.Ct. 1535, 1543, 56 L.Ed.2d 1, 13 (1978) (quoted by *John W.*, 418 A.2d at 1102). *See also Jacobsky*, 496 A.2d at 655 (quoting the *Landmark* test).

 As we apply this test, we place special emphasis on the fact that the vulgar

---

**8.** *See also Gooding v. Wilson*, 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408, 414 (1972) (statute must be carefully drawn or be authoritatively construed to punish only unprotected speech and not susceptible of application to protected expression); *Watts v. United States*, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664, 667 (1969) (statute making criminal a form of pure speech must be interpreted with commands of First Amendment clearly in mind). (Both *Gooding* and *Watts* are cited in both *John W.*, 418 A.2d at 1101, and *State v. Hotham*, 307 A.2d 185, 186–87 (Me.1973)).

**9.** *See also Cohen v. California*, 403 U.S. 15, 22–23, 91 S.Ct. 1780, 1787, 29 L.Ed.2d 284, 292

(1971) (language that is offensive or vulgar but not more cannot be punished).

**10.** *See also Brandenburg v. Ohio*, 395 U.S. 444, 447, 89 S.Ct. 1827, 1829, 23 L.Ed.2d 430, 434 (1969) (state may not forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed at inciting or producing imminent lawless action and is likely to incite or produce such action); *Schenck v. United States*, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919) (the most stringent protection of free speech would not protect a man in falsely shouting fire in a theater and causing a panic).

and abusive language used by the defendant here was addressed not at an ordinary civilian, but at a group of police officers. In *John W.*, we acknowledged that police officers are "trained to exercise a higher degree of restraint than the average citizen," 418 A.2d at 1106 (quoting *Lewis v. City of New Orleans*, 408 U.S. 913, 92 S.Ct. 2499, 33 L.Ed.2d 321 (1972)). We articulated a presumption that unlike a civilian:

> a police officer would not so readily respond violently to conduct of the sort engaged in by John W. To constitute a violation of the [disorderly conduct] statute in these circumstances the conduct must be egregiously offensive, so offensive as to have a direct tendency to cause a violent response even from a police officer.... [E]pithets directed at police officers are not fighting words merely because they might be so if directed at some other person. The nature of the experience, training, and responsibilities of police officers must be considered in determining whether a given defendant's language constituted fighting words.

*John W.*, 418 A.2d at 1106, 1108.

The evidence in the present case indicates that the brunt of Janisczak's vulgar language was directed at Corporal Robbins, who by his own testimony had been a full-time police officer in Richmond for four years at the time of Janisczak's arrest, and had been a part time officer in Richmond for four years before that. We determine that Janisczak's words, directed at an officer of such rank and experience, were not so egregiously offensive to him that they may be deemed "fighting words." Put simply, the defendant's words and actions were not likely to incite Corporal Robbins, or, indeed, the other officers present, to an immediate breach of the peace. *Compare John W.*, 418 A.2d at 1106–08. Nor are we persuaded that in the circumstances of this case Janisczak's words and conduct created a clear and present danger of other substantive evils that the State may permissibly prohibit under the obstructing governmental administration statute or subsection (1)(A) of the disorderly conduct statute. Therefore, we conclude that our societal interest in free and unfettered expression outweighs any danger that could have resulted from Janisczak's vulgar words, and that Janisczak's words were constitutionally protected.

On this basis, we determine that there was insufficient evidence presented at trial to find that Janisczak engaged in disorderly conduct under section 501(1)(A), and accordingly there was insufficient evidence of a "criminal act" presented at trial to substantiate the conviction for obstructing government administration under section 751.

The entry is:

Judgment vacated. Remanded for entry of judgment of acquittal.

ROBERTS and GLASSMAN, JJ., concur.

CLIFFORD, Justice, with whom WATHEN, Justice, joins, concurring.

I concur in the result reached by the court that Janisczak's conviction must be vacated. I disagree, however, that *State v. John W.*, 418 A.2d 1097 (Me.1980), compels such a result.

Janisczak was charged and convicted under 17–A M.R.S.A. § 751(1) (1983) which provides that

> [a] person is guilty of obstructing government administration if he uses force, violence, intimidation or engages in any criminal act with the intent to interfere with a public servant performing or purporting to perform an official function.

It is clear that in arresting Kovtuschenko, the officers were performing an official act, and a jury could certainly infer from Janisczak's actions that he intended to interfere with the arrest.

The trial court instructed the jury that in order to find Janisczak guilty of obstructing government administration, it had to find either that he used intimidation, or that he engaged in a criminal act, namely disorderly conduct. Because of the narrow construction required to be given to criminal statutes, I agree with the Court that the actions of Janisczak do not constitute

intimidation within the meaning of 17–A M.R.S.A. § 751(1).

Therefore, in order for Janisczak to be guilty of obstructing government administration, he would have to be found to have engaged in a criminal act with the intent to interfere with Kovtuschenko's arrest. If he engaged in any criminal act, it was disorderly conduct within the meaning of 17–A M.R.S.A. § 501(2) (1983),[1] on which the jury was not instructed.[2] In defining disorderly conduct, the trial court limited the jury's consideration to the provisions of 17–A M.R.S.A. § 501(A)(1) (1983 & Supp. 1989)[3] prohibiting the making of loud and unreasonable noises. In my judgment, what Janisczak did here was not a violation of section 501(A)(1) and it is for that reason that his conviction must be set aside. I disagree with the Court that the conviction must be vacated because of our decision in *John W.*

In *John W.*, we vacated a conviction of disorderly conduct pursuant to 17–A M.R.S.A. § 501(2) for loud and abusive language not unlike the language Janisczak used here, holding that the conviction violated the speaker's constitutionally protected right of free speech. *Id.* at 1103–06. Although there are some similarities to *John W.*, namely, the language used and that it was addressed to police officers, there are striking differences that make a blanket application of that case most inappropriate. In *John W.* the police "initially

had intruded into the activities" of the defendant. *Id.* at 1108. In this case, at the time of the incident for which Janisczak was charged, the police were engaged in a difficult struggle with a large and obstinate man, Kovtuschenko, requiring the efforts of all five officers present to subdue him.[4] One officer had been injured in attempting to remove Kovtuschenko from his vehicle. Janisczak bolted from the angry and hollering crowd of 30 to 40, rushed up close to the officers and proceeded to yell and scream at them in loud and abusive language. Although no officer testified as to being placed in fear,[5] Janisczak's actions did disrupt the concentration of one officer, concentration that can be crucial to the safe arrest of an unruly subject before an ugly crowd. The "imminence and magnitude of the danger," *id.* at 1102, flowing from Janisczak's words were far greater than in the circumstances of *John W.* The defendant in *John W.* protested an arrest that was peaceful, had been completed, and was not witnessed by an unruly crowd. Janisczak crossed the line from protest to interference and his actions created a "clear and present danger of disorder." *Id.* at 1103.

A jury, had it been properly instructed on the elements of disorderly conduct pursuant to 17–A M.R.S.A. § 501(2), could have found beyond a reasonable doubt that Janisczak "insult[ed], taunt[ed] [and] challenge[d]" the officers with "offensive, deri-

---

1. 17–A M.R.S.A. § 501(2) (1983) provides that a person is guilty of disorderly conduct if:
 (2) In a public or private place, he knowingly accosts, insults, taunts or challenges any person with offensive, derisive, or annoying words, or by gestures or other physical conduct, which would in fact have a tendency to cause a violent response by an ordinary person in the situation of the person so accosted, insulted, taunted or challenged.

2. Because the State did not object to the trial court's failure to instruct the jury on the elements of section 501(2), the issue of whether Janisczak could be found to have committed disorderly conduct under section 501(2) as a criminal act within the meaning of 17–A M.R.S.A. § 751 has not been preserved.

3. 17–A M.R.S.A. § 501(1)(A) (1983 & Supp.1989) provides that a person is guilty of disorderly conduct if:

 (1) In a public place he intentionally or recklessly causes annoyance to others by intentionally:
 (A) Making loud and unreasonable noises.

4. In *State v. Kovtuschenko*, 576 A.2d 206 (Me. 1990), we affirmed the convictions of Kovtuschenko for assault, 17–A M.R.S.A. § 207 (1983 & Supp.1989), and operating a motor vehicle after suspension. 29 M.R.S.A. § 2184 (1978 & Supp. 1989).

5. In determining whether words spoken are constitutionally protected free speech or are likely to cause a breach of the peace, the "subjective response of the actual addressee" need not be looked to but the "*situation* of that addressee" has to be considered. *State v. John W.,* 418 A.2d 1097, 1104 (Me.1980) (emphasis in original).

sive or annoying words," and that in doing so he engaged in a criminal act with the intent to interfere with the arrest of Kovtuschenko. Such words, in the context spoken in this case, because they are likely to cause a violent response and create a danger of disorder, are not constitutionally protected as a matter of law. In my judgment the court reads *John W.* too broadly, and in doing so sanctions pernicious interference with legitimate law enforcement activity that could paralyze and endanger not only law enforcement officers, but the public as well.