[No. D020982. Fourth Dist., Div. One. July 11, 1995.]

In re ALEJANDRO G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ALEJANDRO G., Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

**COUNSEL**

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, M. Howard Wayne and Laura Whitcomb Halgren, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HALLER, J.**—The juvenile court found that Alejandro G. committed two counts of assault with a firearm, one against Darrick Freeman and one against Tony Campbell (Pen. Code,[1] § 245, subd. (a)(2)), discharged a firearm at an unoccupied motor vehicle (§ 247, subd. (b)), and, in a separate incident, used words in a public place that were inherently likely to provoke an immediate violent reaction.[2] (§ 415, subd. (3).) The court committed Alejandro to the California Youth Authority for a maximum period of 11 years and 7 months.

---

[1] All statutory references are to the Penal Code.

[2] The court dismissed an additional count of preventing a police officer from performing his duties (§ 69.)

Alejandro contends the evidence is insufficient to prove (1) he intended to assault more than one victim, and (2) that his words were likely to incite violence. We reject these contentions and affirm the judgment.

### I.  *Section 245\**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II.  *Section 415*

#### A.  *Facts*

On-duty and uniformed San Diego Police Officer James Stevens contacted Alejandro and his uncle, Christopher Parraz, in front of a residence on Altadena Avenue in San Diego. The contact resulted in Officer Stevens's arresting Parraz.

As Stevens was handcuffing Parraz, Alejandro said, "You ain't taking my uncle, mother fucker." Stevens ignored Alejandro and continued handcuffing Parraz. Alejandro then said, "Hey, punk ass mother fucker, take off that gun and badge, and I'll kick your ass." Stevens again ignored Alejandro and finished handcuffing Parraz. At that point, Alejandro said, "Come on. Come on, me and you. Come on, man, me and you." Stevens then walked over to Alejandro and said, "Are you challenging me to a fight?" Alejandro responded, "Fuck yes," at which point Stevens arrested him for challenging him to fight.

#### B.  *Discussion*

Pursuant to section 415, subdivision (3), it is a misdemeanor to use "offensive words in a public place which are inherently likely to provoke an immediate violent reaction."

▇▇▇ Alejandro argues that the obscene language and challenge to fight he directed to Officer Stevens were not likely, as a matter of law, to incite a violent reaction because Officer Stevens was required by his duties as a police officer to refuse Alejandro's challenge to fight. The People urge the requirements of section 415, subdivision (3) have been satisfied because the issue is Alejandro's conduct, not Officer Stevens's reaction.

▇▇▇ Section 415, subdivision (3) codifies the "fighting words" exception to the right of free speech under the First Amendment of the United States

---

\*See footnote, *ante,* page 44.

Constitution. "Fighting words" are " 'those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. . . . [S]uch utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.' " (*In re John V.* (1985) 167 Cal.App.3d 761, 767-768 [213 Cal.Rptr. 503], quoting *Chaplinsky* v. *New Hampshire* (1942) 315 U.S. 568, 571-572 [86 L.Ed. 1031, 1035, 62 S.Ct. 766].)

■ Whether offensive words uttered in a public place are inherently likely to provoke an immediate violent reaction must be decided on a case-by-case basis. "[T]he mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet cannot alone be grounds for prosecution . . . . [¶] The context in which the words are used must be considered, and there must be a showing that the words were uttered in a provocative manner, so that there was a clear and present danger violence would erupt." (*Jefferson* v. *Superior Court* (1975) 51 Cal.App.3d 721, 724-725 [124 Cal.Rptr. 507].)

■ The words uttered by Alejandro to Officer Stevens would constitute "fighting words" in violation of section 415, subdivision (3) if addressed with hostility to an average citizen. The issue we must decide is whether the court reasonably concluded that Alejandro's words were inherently likely to provoke an immediate violent reaction under the particular circumstances surrounding their utterance, including the fact they were addressed to a police officer.

In his concurring opinion in *Lewis* v. *City of New Orleans* (1974) 415 U.S. 130 [39 L.Ed.2d 214, 94 S.Ct. 970], Justice Powell noted "words may or may not be 'fighting words,' depending upon the circumstances of their utterance. It is unlikely, for example, that the words said to have been used here would have precipitated a physical confrontation between the middle-aged woman who spoke them and the police officer in whose presence they were uttered. The words may well have conveyed anger and frustration without provoking a violent reaction from the officer. Moreover, . . . a properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.' " (*Id.* at p. 135 [39 L.Ed.2d at p. 220] (conc. opn. of Powell, J.).)

In *Houston* v. *Hill* (1987) 482 U.S. 451 [96 L.Ed.2d 398, 107 S.Ct. 2502], the United States Supreme Court recognized Justice Powell's suggestion that "the 'fighting words' exception . . . might require a narrower application in cases involving words addressed to a police officer . . . ," and observed

that "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." (*Id.* at pp. 462-463 [96 L.Ed.2d at pp. 412-413].)

We are unaware of any reported California case addressing the applicability of section 415, subdivision (3) to offensive language uttered to an on-duty police officer. However, the issue raised by Alejandro has been addressed in other jurisdictions, with conflicting results.

Some have adopted Justice Powell's view that hostile language amounting to fighting words, when addressed to an ordinary citizen, may not be fighting words when addressed to a police officer who is trained to "exercise a higher degree of restraint" than the average citizen. (See, e.g., *State* v. *John W.* (Me. 1980) 418 A.2d 1097 [14 A.L.R.4th 1238] [vulgar words spoken to police officer in protest of arrest held not to be "fighting words"]; *State* v. *Janisczak* (Me. 1990) 579 A.2d 736 [words that were merely vulgar and annoying to police officers did not amount to "fighting words"]; *City of Chicago* v. *Blakemore* (1973) 15 Ill.App.3d 994 [305 N.E.2d 687] [calling officer a "son of a bitch" and "pig" without any other overt act did not amount to a breach of peace].)

Other courts have declined to apply a different standard to police officers. (See, e.g., *L.J.M.* v. *State* (Fla.Dist.Ct.App. 1989) 541 So.2d 1321 [vulgar words addressed to police officer held to be fighting words]; *Robinson* v. *State* (Ind.Ct.App. 1992) 588 N.E.2d 533 [similar result].) In *Duncan* v. *United States* (D.C. 1966) 219 A.2d 110, the appellant said to a police officer who had just ordered him to move off a street corner, " 'No black s—o—b—, m—f—cop is going to chase me off the corner.' " (*Id.* at p. 111.) Finding the appellant's arrest was lawful, the court stated his words were "insulting, degrading, abusive, and fighting words an invitation to trouble and a breach of the peace. That they were addressed to . . . a police officer does not alter the situation." (*Id.* at p. 112.)

We reject the contention that "fighting words" uttered to a police officer cannot, as a matter of law, constitute a violation of section 415, subdivision (3) because a police officer is required to exercise a higher degree of restraint than the average citizen in reacting to verbal abuse. However, we also reject the People's suggestion that courts should look solely to the content of the words without regard to the fact they were uttered to a police officer. In determining whether section 415 subdivision (3) was violated, courts must consider the totality of the circumstances, including the status of the addressee. That the addressee was a police officer trained and obliged to

exercise a higher degree of restraint than the average citizen is merely one factor to be considered along with the other circumstances.

Turning to the present case, we conclude the court's true finding on the section 415, subdivision (3) count is substantially supported by the evidence. First, it is significant that Alejandro expressly challenged Officer Stevens to fight, thereby posing a real threat of violence, as opposed to addressing language to Stevens which was merely vulgar, insulting and/or annoying. Second, Stevens testified he felt personally threatened by Alejandro and "felt that based upon his verbal assaults that it could turn into physical assault."

The circumstances of the present case are similar to those in *City of Bismarck* v. *Nassif* (N.D. 1989) 449 N.W.2d 789. In *Nassif* the defendant, in a confrontation with police officers just outside his house, said to an officer, " 'you fucking son of a bitch, I'm going to go back into the house and get my shotgun and blow you bastards away.' " (*Id.* at p. 791.) The officers who heard the defendant's remarks were " 'alarmed by the tone of the language, the context of the language, and the concern or threat that was implied to them . . . .' " (*Id.* at p. 793.) Taking into consideration the fact that the words at issue were addressed to police officers, and noting the higher degree of restraint expected of police officers, the *Nassif* court nevertheless concluded that ". . . a jury consisting of reasonable people could have reasonably concluded that the threat of Nassif to get his shotgun and 'blow you bastards away' was sufficient to produce a clear and present danger of a serious substantive evil that arose far above public inconvenience, annoyance or unrest, especially in light of the testimony of the effect of those words upon the officers. Therefore, we conclude that the evidence, when viewed in the light most favorable to the verdict, reveals that Nassif's language constituted 'fighting words.' " (*Id.* at p. 795.)

As in *Nassif*, the evidence in the present case shows that Alejandro made threats of actual violence which caused the police officer to whom they were directed to feel personally threatened. Viewing that evidence in the light most favorable to the judgment, we conclude the court could reasonably have found that Alejandro's words to Officer Stevens, under the circumstances, were offensive words inherently likely to provoke an immediate violent reaction within the meaning of section 415, subdivision (3).

## DISPOSITION

The judgment is affirmed.

Huffman, Acting P. J., and Hoffman, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied October 18, 1995.

---

*Judge of the San Diego Supeiror Court sitting under assignment by the Chairperson of the Judicial Council.