Filed 1/23/14  In re T.M. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re T.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>T.M.,<br><br>    Defendant and Appellant. | F066406<br><br>(Super. Ct. No. JL003191)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  David W. Moranda, Judge.

Candice L. Christensen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Wanda Hill Rouzan, Deputy Attorneys General, for Plaintiff and Respondent.

---

\*    Before Levy, Acting P.J., Cornell, J. and Gomes, J.

**-ooOoo-**

Defendant T.M. was charged with felony disturbing the peace (Pen. Code,[1] § 415, subd. (3); count 1) and a probation violation (Welf. & Inst. Code, § 777; count 2) in a subsequent petition filed pursuant to Welfare and Institutions Code section 602.[2]  Count 1 alleged that defendant acted for the benefit of a criminal street gang within the meaning of section 186.22, subdivision (d).  After a contested jurisdictional hearing, the juvenile court found the allegations in the petition to be true.  On December 13, 2012, the court continued defendant as a ward and placed her on probation.

On appeal, defendant contends:  (1) her statements to a high school vice principal, made in the presence of a police officer, were admitted in violation of *Miranda v. Arizona* (1966) 384 U.S. 436, 444 (*Miranda*); (2) her use of the epithet "scrap bitches" was protected speech and did not violate section 415; and (3) insufficient evidence supports the gang enhancement because there is no evidence she acted with the required specific intent.  We affirm.

### *FACTS*

On October 27, 2012, around 3:00 p.m., defendant was a passenger on a school bus driving in the City of Atwater, which is predominately Sureño gang territory.  As the bus approached a bus stop, the bus driver observed some students or young people walking on the sidewalk.  A student on the bus identified them to the bus driver as the kids who had beat up another student on the bus.

When the bus stopped, defendant and another female student got up from their seats, lowered their windows, and started yelling and being confrontational towards the group of young people on the sidewalk.  The group came towards the bus and began

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    Defendant had a prior sustained petition in 2009 for assault with a deadly weapon (§ 245, subd. (a)(1)) and petty theft (§ 488).

2.

kicking the bus and trying to get inside. Defendant and her companion ignored the bus driver's repeated requests to sit down. Finally, the bus driver drove away while they were still standing.

The next day, defendant was questioned about the incident by Vice Principal Marvulli in his office at Sequoia High School. Merced Police Officer Bernard Dalia was also present during the interview. Defendant told Marvulli that when she saw the group on the sidewalk, she thought they were "scraps," which is a derogatory term members of the Norteño gang use towards members of the rival Sureño gang. According to defendant, when she and her friend leaned out the window, one of the girls on the sidewalk said their words were "shit." Defendant and her friend responded by yelling back that they were "scrap bitches."

After placing defendant under arrest and advising her of her *Miranda* rights, Officer Dalia questioned her about her gang affiliation. Defendant admitted she associated with members of Rebels before Locs (RBL), a subset of the Norteño gang. Defendant said her stepfather and boyfriend (and father of her child) were both RBL Norteños.[3]

Merced Police Officer Edward Drum testified as a gang expert. In his experience investigating incidents between Norteños and Sureños, he noted most incidents started with verbal insults. Officer Drum had seen incidents in which a Norteño calling out "scrap" had resulted in violence, including shootings.

Through hypothetical questions, Officer Drum opined that defendant's conduct in yelling a gang slur at the group on the sidewalk benefitted the Norteño gang. Officer Drum explained:

---

[3]    The prosecution's gang expert opined that defendant was also a member of the gang. However, the juvenile court ultimately found there was no evidence defendant was a gang member, observing: "The only thing is that she associates with a couple of people that are gang members."

"Because it's showing that they're causing a sense of power for that organization, not only creating power but with power they're showing that they're not scared of their enemies, which at that time is the Sureños, okay.

"It also creates a fear and intimidation for the people who may be surrounding them as the individuals on the bus.

"It can also be used to not make people want to come forward and report any kind of criminal activity to law enforcement because they're scared of the repercussions that may come from them reporting it.…"

In Officer Drum's opinion, the location of the incident was significant. He explained:

"Because it happened in Atwater where Atwater is predominately Sureño gang territory and it shows that even when they're going into a territory that is not predominately Norteño they're still expressing to their rivals, hey, we're not scared of you, we're going to, if we have to fight in this territory, we'll fight in this territory, and try to create a sense of fear among the rivals even though they're on their home turf."

## *DISCUSSION*

### I.      *The juvenile court did not violate Miranda by admitting defendant's statements to vice Principal Marvulli.*

Defendant contends the juvenile court erred by admitting her statements to Marvulli because the interview in the vice principal's office was conducted in violation of her *Miranda* rights.

We review the juvenile court's findings of fact for substantial evidence and we review the court's ruling de novo. (*People v. Clair* (1992) 2 Cal.4th 629, 678.)

During the hearing on the admissibility of defendant's statements, Officer Dalia testified that he knew Marvulli was going to be calling defendant in and asking her questions about what happened on the school bus the previous day. However, the officer did not ask Marvulli to ask defendant any particular questions. Officer Dalia, who was in his uniform, stood to the side of Marvulli's desk and defendant sat in front of the desk while Marvulli questioned her. Officer Dalia noted in his report that Marvulli conducted

4.

the school investigation while he (Dalia) contemporaneously conducted his criminal investigation. Officer Dalia testified he allowed Marvulli to ask defendant questions until the officer determined an actual crime took place at which point he stepped in and arrested defendant. Officer Dalia did not ask defendant any questions before he arrested her and advised her of her *Miranda* rights. At the conclusion of the hearing, the juvenile court found defendant's statements to Marvulli prior to her arrest were admissible, explaining it did not see the vice principal as acting as an agent for Officer Dalia while questioning defendant.

"The procedural safeguards set forth in *Miranda* 'come into play only where "custodial interrogation" is involved, and by "custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."' [Citation.] 'A private citizen is not required to advise another individual of his rights before questioning him.'" (*In re Eric J.* (1979) 25 Cal.3d 522, 527 (*Eric J.*).) A school principal is a private citizen who need not give *Miranda* warnings prior to questioning a student. (*In re Corey L.* (1988) 203 Cal. App. 3d 1020, 1024.)

"'"Absent evidence of complicity on the part of law enforcement officials, the admissions or statements of a defendant to a private citizen infringe no constitutional guarantees."'" (*Eric J.*, *supra*, 25 Cal.3d at p. 527.) In *Eric J.*, the court held *Miranda* warnings were unnecessary when an employer questioned an employee in the presence of a police officer because substantial evidence supported the court's direct and implied findings that the police officer did not question the employee and there was no complicity between the employer and the police officer. (*Ibid.*)

Substantial evidence supports the juvenile court's finding that Marvulli was not acting as Officer Dalia's agent when he questioned defendant, as well as the court's implied finding that Marvulli and Dalia were not complicit in the investigation. Not only was there no evidence Officer Dalia initiated Marvulli's questioning of defendant, the

5.

officer's testimony indicated that he and the vice principal were engaged in conducting separate investigations for different purposes albeit simultaneously.  Because the evidence supports a reasonable inference that Marvulli was questioning defendant in his capacity as a school vice principal and private citizen, he was not required to give defendant *Miranda* advisements before questioning her, and the juvenile court properly concluded her statements to Marvulli were admissible.

Defendant contends the juvenile court also erred by failing to apply the test set forth by *J.D.B. v. North Carolina* (2011) 564 U.S. ___ [131 S.Ct. 2394] (*J.D.B.*), which held that a juvenile suspect's age must be taken into account when considering the *Miranda* custody analysis.  (*Id.* at p. ___ [131 S.Ct. at pp. 2402-2403].)  *J.D.B.* is inapposite.  There, a uniformed police officer removed the juvenile, who was 13 years old, from his seventh grade classroom, and an investigator questioned him in a closed-door conference room in the presence of two school officials.  (*Id.* at p. ___ [131 S.Ct. at p. 2399].)  Here, the questioning at issue was conducted, not by a law enforcement official, but by a school vice principal acting as a private citizen.  Under these circumstances, *Miranda* warnings were simply not required.

## II.     *Defendant's conduct in yelling "scrap bitches" established a violation of section 415, subdivision (3); her words were not protected by the First Amendment.*

Next, defendant contends her use of the epithet "scrap bitches" was protected speech and therefore failed to establish she disturbed the peace in violation of section 415, subdivision (3).[4]

---

**4**     Section 415 provides:
"Any of the following persons shall be punished by imprisonment in the county jail for a period of not more than 90 days, a fine of not more than four hundred dollars ($400), or both such imprisonment and fine:
"(1) Any person who unlawfully fights in a public place or challenges another person in a public place to fight.                                    [Fn. Contd.]

6.

Section 415, subdivision (3) codifies the fighting words exception to the right of free speech under the First Amendment of the United States Constitution. Words which by their very utterance inflict injury or tend to incite an immediate breach of the peace are fighting words. Such utterances are not an essential part of the exposition of ideas and are of slight social value that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. (*In re Alejandro G.* (1995) 37 Cal.App.4th 44, 47-48 (*Alejandro G.*), *In re John V.* (1985) 167 Cal.App.3d 761, 767-768.)

Whether offensive words uttered in a public place are inherently likely to provoke an immediate violent reaction must be decided on a case-by-case basis. The mere use of vulgar, profane, indecorous, scurrilous, opprobrious epithet cannot alone be ground for prosecution. The context in which the words are used must be considered. There must be a showing that the words were uttered in a provocative manner so that there is a clear and present danger violence could erupt. (*Alejandro G.*, *supra*, 37 Cal.App.4th 44, 48.)

In the context of this case, defendant's words could be reasonably construed by the trier of fact to constitute "offensive words in a public place which are inherently likely to provoke an immediate violent reaction" under section 415, subdivision (3). The evidence established that defendant (who had close ties to at least two Norteño gang members), while riding a school bus through a Sureño-dominated town, yelled "scrap bitches" to a group of individuals she perceived to be Sureños. As Officer Drum explained, "scraps" is a derogatory term Norteños use against Sureños and *most* incidents of violence between Norteños and Sureños start with such verbal insults. In light of all the circumstances surrounding defendant's provocative use of the epithet "scrap bitches," the

---

"(2) Any person who maliciously and willfully disturbs another person by loud and unreasonable noise.

"(3) Any person who uses offensive words in a public place which are inherently likely to provoke an immediate violent reaction."

7.

juvenile court could reasonably conclude that defendant created a clear and present danger that violence would immediately erupt, and in fact did erupt as the recipients of defendant's epithet reacted by physically attacking and attempting to board the bus.

### III.    *Sufficiency of evidence supporting gang enhancement*

Lastly, defendant challenges the sufficiency of the evidence supporting the juvenile court's finding on the section 186.22, subdivision (d) gang allegation.

Subdivision (d) of section 186.22 provides in pertinent part:  "Any person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished by imprisonment in the county jail ... , or by imprisonment in the state prison ...."  Subdivision (d) of section 186.22 is an alternative penalty provision that is substantively similar to the gang enhancement provision under subdivision (b) of section 186.22.  (Compare § 186.22, subd. (d) with subd. (b)(1).)

In order to prove the enhancement, the prosecution must establish (1) that the defendant committed the underlying offense "for the benefit of, at the direction of, or in association with any criminal street gang," and (2) that the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (d).)  Defendant specifically challenges the sufficiency of the evidence that she intended to promote, further, or assist criminal conduct by Norteño gang members.

"In determining whether the evidence is sufficient to support a conviction or an enhancement, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'  [Citations.]  Under this standard, 'an appellate court in a criminal case … does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'  [Citation.]  Rather, the

reviewing court 'must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] This standard applies to a claim of insufficiency of the evidence to support a gang enhancement. [Citation.]" (*People v. Vy* (2004) 122 Cal.App.4th 1209, 1224.)

Emphasizing the lack of evidence establishing she herself was a Norteño gang member, defendant complains the evidence failed to show the incident was gang related. According to defendant, "[s]he was merely a passenger on a school bus stopped in Atwater which happened to be Sureño territory." We find defendant's arguments unpersuasive and, like the juvenile court, "have no problem finding that her intent was to promote the gang."

The lack of evidence establishing defendant was a gang member did not preclude a finding that the crime was gang related. As discussed above, the evidence showed defendant yelled a provocative term that Norteños use against Sureños at a group of individuals she believed to be Sureños while she was on a bus travelling through Sureño territory. The juvenile court could have drawn the reasonable inference that defendant purposefully chose to shout a gang insult that identified her as a supporter of Norteños to enhance the violent and fearless reputation of her boyfriend and stepfather's gang, and further future criminal behavior by the Norteño gang members with whom she associated. We therefore find there was sufficient evidence to support the juvenile court's finding that defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (d).)

## *DISPOSITION*

The judgment is affirmed.

9.