Filed 6/12/14  P. v. Rodriguez CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRAULIO RAY RODRIGUEZ,<br><br>    Defendant and Appellant. | 2d Crim. No. B247514<br>(Super. Ct. No. 2012035750)<br>(Ventura County) |

Braulio Ray Rodriguez appeals the judgment entered after he was convicted by a jury of disturbing the peace, in violation of Penal Code section 415, subdivision (1),[1] and of committing the crime for the benefit of a street gang, in violation of section 186.22, subdivision (d).  Appellant was sentenced to three years in the California Department of Corrections.

Appellant contends the trial court erred by refusing to modify CALCRIM No. 2688 by adding a statement that he could not be found guilty of the crime of challenging another person to fight by "the mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet."  We reject the contention and affirm.

---

[1] All subsequent statutory references are to the Penal Code.

STATEMENT OF FACTS

On September 1, 2012, Appellant, another man and two women were using the Jacuzzi at the Serenade Apartments in Oxnard. The Jacuzzi and a swimming pool are exclusively for the use of tenants and their guests.

Michael Kotz is a uniformed, armed, licensed security guard who was assigned to patrol the apartments. One of his tasks is to confirm that persons using the swimming pool and Jacuzzi are authorized to do so. Tenants must show the key to their apartment to confirm their status.

Kotz testified that he approached the persons in the Jacuzzi and asked if they were tenants. One of the women said she was. When Kotz asked to see her key, he was told that a third woman had taken it to return to her apartment. Kotz said he would return later to confirm their status.

As Kotz walked away, Appellant aggressively yelled, "I'll remember your face, fool." Kotz said, "What did you say?" Appellant then got out of the Jacuzzi and approached Kotz saying, "You heard me." Appellant was shirtless and a tattoo announcing his status as a member of the El Rio street gang was plainly visible on his chest. "Trouble Street" was tattooed on Appellant's back. Kotz was aware that the El Rio gang is a violent criminal street gang in Oxnard.

Kotz then told the woman she and her companions would have to leave because of Appellant's actions and because they could not produce a key. Appellant confronted Kotz. He stood about a foot in front of Kotz, stuck out his chest and said, "You're disrespecting me." Appellant came within inches of Kotz, and while pointing at his El Rio tattoo repeatedly said, "Do you know where I'm from? From El Rio." Kotz felt threatened by Appellant's words and gestures. As Kotz moved away from Appellant toward an exit, Appellant moved too, telling Kotz, "Follow me." Appellant told one of the women in the group that he was "going to take care of" Kotz.

Kotz regarded these words and gestures to be threats, believed Appellant was challenging him to fight and concluded that he was about to be attacked. Hoping to discourage Appellant, Kotz began to record the event on his mobile phone. Appellant then displayed his middle finger and pushed Kotz and again told him to come with him.

Later, Appellant confronted Kotz in the parking lot and offered the threat "Wait 'till I see you on the street" and threatened to "catch him on the street." Kotz reported the incident to the police when his shift at the apartments ended. Appellant was arrested but when interviewed, denied being involved in any incident at the apartments or even of being there on the day in question.

## DISCUSSION

Appellant contends the trial court erred by refusing to add a phrase to instruction CALCRIM No. 2688 that would advise the jury that it could not find him guilty of the crime of challenging another person to fight by "[t]he mere use of a vulgar, profane, indecorous, scurrilous, opprobrious epithet . . . ." We disagree.

CALCRIM No. 2688 details for the jury the elements of the crime prosecutors were required to prove; viz., (1) that Appellant willfully and unlawfully challenged Kotz to fight; and (2) that Appellant and Kotz were in a public place. The instruction explains that "[a] challenge to fight means actions and/or words which communicate to a reasonable person that he or she is being invited or challenged to engage in a physical fight. In determining whether there has been a challenge to fight, you shall consider all of the evidence presented in this case."

The special instruction proposed by Appellant is based upon a false premise. His argument and the authority he cites assume he was charged with a violation of section 415, subdivision (3) - uttering offensive words that were inherently likely to provoke an immediate violent reaction. He was not. The crime charged was violating section 415, subdivision (1) - challenging Kotz to

3

fight. The crimes are dissimilar and the principles that apply to one do not apply to the other.

Whether or not someone has been challenged to fight requires consideration of "all of the evidence," including any "vulgar, profane, indecorous, scurrilous, opprobrious epithet[s]" uttered by Appellant in the context of the entire confrontation - just as the jury here was instructed. It is the totality of the circumstances that matters. It is all relevant, and there is no protected speech in the utterance of a challenge to fight. CALCRIM No. 2668 accurately restates the law applicable to the crime charged and properly guides the jury in what to consider in reaching its verdict.

The decisional law cited by Appellant does not support the instruction he requested. *In re Alejandro G.* (1995) 37 Cal.App.4th 44 addresses section 415, subdivision (3) that makes offensive words unlawful if they are "likely to provoke an immediate violent reaction" - so-called "fighting words." *In re Brown* (1973) 9 Cal.3d 612 addresses the elements of unlawful assembly a crime then proscribed by section 408 and section 415, subsection (2) [loud noises]. In *Jefferson v. Superior Court* (1975) 51 Cal.App.3d 721 the court addressed offensive words likely to produce a violent reaction, not the crime of which Appellant was charged and convicted. Finally, *Cohen v. California* (1971) 403 U.S. 15 was decided before section 415 was amended in 1974 to respond to decisions of the United States Supreme Court invalidating portions of the previous version of section 415. Subdivision (1) of the section, however, has been the same since 1850.

The amendments to section 415 were explained in *In re Cesar V.* (2011) 192 Cal.App.4th 989. The explanation demonstrates why no specific intent is required to prove a violation of section 415, subdivision (1) and why none of the words and conduct of the parties to a confrontation is excluded from consideration in determining whether a challenge to fight was uttered.

4

"The new version [of section 415] was intended to 'regulate pure speech (without the necessity of any other conduct) when the communication would tend to result in a violent reaction.' [Citation.] The old version of . . . section 415 had no subdivisions and prohibited a variety of speech and conduct in a single sentence. In contrast, the new version contained three subdivisions, each of which covered a distinct type of offense . . . . Section 415, subdivision (1) contained no reference to any mental state whatsoever, and applied only to 'fights' and 'challenges . . . to fight' that occurred in a public place. Subdivision (2) explicitly required that the perpetrator act 'maliciously and willfully,' applied only to 'disturb[ing] another person by loud and unreasonable noise,' and was not limited to events that occurred in public places. Subdivision (3) did not refer to any mental state and applied to the use of 'offensive words in a public place,' but was restricted to words 'inherently likely to provoke an immediate violent reaction.' [¶] The Legislature's use of three separate subdivisions was part of a carefully calibrated scheme designed to prohibit communications that 'would tend to result in a violent reaction.' Because a fight or challenge to fight in a public place *necessarily* tends to result in a violent reaction, the Legislature found no need to delimit the application of subdivision (1). On the other hand, because 'offensive words' and 'loud and unreasonable noise' do not necessarily tend to result in a violent reaction, the Legislature imposed additional requirements designed to limit these prohibitions to those words and noises which 'would tend to result in a violent reaction.' [¶] The Legislature's calibration of the mental states and other elements required under each subdivision of . . . section 415 was inherently reasonable. A *challenge* to fight is prohibited because such a challenge may provoke a violent response that endangers not only the challenger but any other persons who may be in the public place where the challenge occurs. . . . If a person challenges another person to fight in a public place, he or she violates . . . section 415, subdivision (1)." (*In re Cesar V.*, *supra*, 192 Cal.App.3d at pp. 998-999.)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BURKE, J.[*]


We concur:



GILBERT, P. J.



PERREN, J.

[*] (Judge of the Superior Court of San Luis Obispo County, assigned by the Chief Justice pursuant to art. 6, § 6 of the Cal. Const.)

6

Matthew P. Guasco, Judge

Superior Court County of Ventura
_____


Stephen P. Lipson, Public Defender, Michael C. McMahon, Chief Deputy, Supriya Bhat and William M. Quest, Deputy Public Defenders for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Stephanie A. Miyoshi, David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.